## DE GRASSE B. FOWLER, Respondent, v. PETER SMITH and MARY A. SMITH, his wife, Appellants.

All contracts made in this State, prior to the Act of 22nd of April, 1850, must have their effect and construction by the rules of the civil law.

The warranty implied in a sale made by general terms, under this system, is equivalent to a covenant that the buyer shall quietly possess and enjoy, and nothing more. And to give a buyer a right of action upon this warranty, there must have taken place an actual judicial eviction, by the sentence of a competent tribunal, and this sentence carried into effect.

Such purchaser, while he retains possession, cannot resist the payment of the purchase-money, however defective his title, and has no right to a rescission of his contract.

The Spanish law allows *legal* interest, which is where the parties have not agreed upon a rate, and *conventional* interest, which is the rate usual at a given time and a given place; and which may be greater or less than legal interest.

To establish usury, the party must show that the rate agreed upon was greater than that which was customary, at the time and place of the contract.

APPEAL from the Superior Court of the City of San Francisco.

This cause was first heard in this Court, at January term, 1852, and will be found reported in this volume, at page 39, et seq.; to that report we refer for the facts of the case and the arguments of counsel.

After the decision of the Court, the appellant petitioned for a rehearing; and the argument of counsel in favour of the petition, is also reported, ante, page 50.

The petition was granted at January term, 1852, and the case ordered to be reinstated upon the calendar.

At October term, 1852, the following opinions were delivered.

· HEYDENFELDT, Justice, with whom ANDERSON, Justice, concurred.

When the territory now comprised in the State of California, was under Mexican dominion, its judicial system was that of the Roman law, modified by Spanish and Mexican legislation. Upon

the formation of the present State government, that system was ordained by a constitutional provision to be continued, until it should be changed by the legislature. At the first session of the legislature an act was passed, adopting the common law of England; and on the 22nd of April, 1850, another act was passed, repealing all the laws previously in force, but providing, "that no right acquired, contracts made, or suits pending, shall be affected thereby."

It must, therefore, be considered beyond dispute, that all contracts made here before the 22nd April, 1850, must have their effect and construction by the rules of the civil law.

In this case those rules have been properly invoked by the defendant, because his contract of purchase was made prior to their repeal. And this Court, as well as it is bound to know judicially the act of repeal, is also bound to know that which was repealed. So in applying the law which decides the rights of the parties to this cause, I shall refer alone to the system under which the contract was made. A sale of property when made by the use of general terms, implies an obligation on the part of the seller, to cause the buyer to have the thing which is sold, by a title of proprietor, to deliver him possession, and to defend him against whatever may deprive him of possession. See Pothier on Contract of Sale. Possession seems to be looked upon as the great object of purchase, and the great symbol of right; and as long as it remains undisturbed, the seller has fulfilled his obligation. So much so, that even if the buyer discovers "that the seller was not the owner of the thing sold, and consequently, that the property in it has not been transferred to him," yet, as long as he retains the possession, he cannot complain of the seller. See Pothier on Contracts.

Thus, it appears clearly, that the implied warranty of the seller is equivalent to a covenant, that the buyer shall quietly possess and enjoy, and nothing more. To give, therefore, the buyer a right of action on the warranty of the seller, there must have taken place an actual eviction; and that must be not merely an ouster by the sufferance, negligence, or other act of the buyer, but a judicial eviction, by the sentence of a tribunal of competent jurisdiction. And it is shown by Pothier, that even a sentence of eviction, is not enough to create a breach of the war-

ranty, upon which to found an action, unless the sentence is carried into effect; 1 Pothier on Contracts, 89.

In Louisiana, which was also under Spanish domination, and where the civil law yet prevails, the same doctrine has frequently been held.   See Bessy *v.* Pintardo, 3 Louisiana Reports, 488; Winkle *v.* Tyler, 3 Martin, N. S., 111; and in Thompson *v.* Dupeny, 3 Louisiana Reports, 432, the same principle is declared; but the Court say that it is governed by the provisions of the old civil code.   It appears from the remark made in that opinion, and from one or two subsequent decisions, that the rule has been modified in Louisiana by her legislature; Pepper et al. *v.* Dunlap, 9 Rob. 299.   Such, however, has not been the case in Spain or Mexico.   In Schmidt's translation of the civil law of Spain and Mexico, a work published within a very recent period, the rule of the Roman code is laid down with sufficient clearness; art. 445, 446, 7, 8.

This examination of the chief question raised by the record, shows that the appellant has no right to a rescission of his contract, and none to resist the payment of the purchase-money. As, however, under our present remedial system, the dismissal of his cross bill, might operate to bar his action hereafter, in the event that he is evicted, the bill should have been dismissed without prejudice.

The other question of merit raised by the appellant is, on the defence of usury.   On this point, while I admit the principle to be that a contract is void for usury, I cannot see that this contract is usurious.   By the Spanish law, there is established two kinds of interest; first, legal interest, which is the rate fixed by law, and attaching to contracts, where the parties have not agreed upon a rate; and second, conventional, or customary interest; which is the rate general and usual by custom, at a given time, in a given place; and which may be greater or less than legal interest.   If less, then to exceed the legal rate, is usury; if greater, then to exceed the conventional rate, is also usury; see Carseogues *v.* Deyasseary, 1 Con. Lou. Reports, 2; Henman *v.* Sprigg, 2 Con. Lou. Reports, 58.

The appellant has not shown that the rate agreed upon by him is greater than that which was customary at the time and place of the contract; and his defence is therefore unsustained.

The judgment and decree of the Court below is here amended by an order, that the defendant's cross bill be dismissed without prejudice. And the judgment and decree below is in all things affirmed with costs.

MURRAY, Chief Justice.—I am of opinion that the judgment of the Court below should be affirmed, for the reasons stated in my opinion filed in this cause, February 4th, 1852, and cannot give my assent to any other rule of decision, upon the questions involved.