## KROUSE v. KROUSE.

[No. 7,271.    Filed June 2, 1911.]

1. EVIDENCE.—*Judicial Notice.—Sister-State Laws.—Rule of Decision.*—Courts do not take judicial notice of the laws of other states, and the law of the state in which the action is brought determines *prima facie* the rule of decision, a party depending upon the law of another state being required to plead and to prove it.  p. 5.

2. JUSTICES OF THE PEACE.—*Procedure.—Defenses.—When Required to be Pleaded.*—In an action before a justice of the peace, all defenses except the statute of limitations, set-off, matter in abatement, and *non est factum*, may be given in evidence under the general denial (§1749 Burns 1908, §1460 R. S. 1881).  p. 5.

3. BILLS AND NOTES.—*Execution in Another State.—Presumptions as to Law Governing.—California.—Civil Law.*—Though the ordinary presumption is that a note executed in another state is governed by the common law as interpreted and applied in this State, such presumption does not obtain for the State of California, the court taking judicial notice that it constituted a part of Mexico, and was not originally settled by English people, and was therefore governed by the civil law, unless such law was superseded by subsequent constitutional or statutory enactment.  p. 5.

4. EVIDENCE.—*Judicial Notice.—Historical Facts.*—Courts of other states judicially know that the civil law prevailed in California at the time of its admission into the Union, but they do not judicially know whether the civil law has been changed since that time.  p. 7.

5. BILLS AND NOTES.—*Execution in California.—Presumption as to Governing Law.*—There being no presumption that the common law prevails in California, such state having been governed by the civil law, the courts of this State, in an action upon a note executed in that state, will determine the validity of the note

by the laws of this State, where the laws of California have not been proved. p. 8.

6. BILLS AND NOTES.—*Husband to Wife.*—A note executed by a husband to his wife is not void because of the relationship of· the parties. p. 8.

7. BILLS AND NOTES.—*Duress.*—*Concealment of Husband's Clothing.*—*Attorneys.*—A wife who was living in separate apartments from her husband in San Francisco at the time of the San Francisco earthquake, and who concealed her husband's best suit and refused to disclose its whereabouts until he executed the note in suit which represented, as she claimed, a part only of his upkeep, is not guilty of duress of goods, as a matter of law, on the ground that her husband was a lawyer and was under the dire necessity of presenting a neat appearance to hold his clients, especially where there is a failure of proof that he had any clients. p. 8.

8. APPEAL.—*Death.*—*Mandate.*—Where appellant dies before an affirmance of the judgment appealed from, it will be affirmed as of the date of submission. p. 11.

From Superior Court of Marion County (77,701); *Vinson Carter,* Judge.

Action by Susanna Krouse against Harry A. Krouse. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Brown & Kepperley,* for appellant.
*John M. Wall,* for appellee.

IBACH, J.—Appellee sued appellant on a note, which was in the following words and figures:

"I promise to pay to my wife (Mrs. H. A. Krouse), known as Maryland S. B. Sheppard, $150, she has loaned me from time to time, at the end of three months, or before, if I am earning any money.
                                            H. A. Krouse."
April 29, 1906.
Not negotiable.
Mrs. T. O. Olsen.

The action was originally brought before a justice of the peace, and the transcript was filed in the circuit court on appeal. The only pleading filed was the complaint. The cause was tried without a jury. The court found against

appellant in the sum of $173.25, and rendered judgment on the finding. The only error assigned is the overruling of appellant's motion for a new trial.

Appellant relies for reversal of the judgment on two points: (1) The note sued on is void because made by husband to wife, and as it was executed in California, in the absence of proof to the contrary, the presumption is that the common law prevails in a foreign state; (2) the note was executed under duress.

The first question then is, in the absence of proof, What is presumed to be the law of California?

Courts do not take judicial notice of the laws of other states, and in all cases the laws of the state in which an action is brought determine *prima facie* the rule of decision. To obtain the benefit of a different rule, a party must aver it in his pleading, and make this rule a matter of proof. But the present suit was begun in the court of a justice of the peace, and under our code of practice in such courts any matter of defense, except the statute of limitations, set-off, matter in abatement or denial of execution, may be given in evidence without plea. §1749 Burns 1908, §1460 R. S. 1881. It appears from the evidence that the note sued on was executed in California. In the absence of proof to the contrary, the general presumption is that the common law prevails in another state, and the court will apply the common law according to its interpretation by the courts of the state of the forum. Therefore, appellant urges that, as no proof was made of the statute law of California, the rule is to presume the existence of the common law, and to be governed by its principles, and since, under the common law, there could be no valid contract between husband and wife, there can be no recovery in this action.

There would be some merit in this contention, had California been one of the original colonies of England, or been formed out of territory composing such colonies, for there

is no doubt that the common law is the basis of the laws in those states composing the territory originally comprised by the thirteen colonies. The early settlers brought it into our land, and established it as far as it was applicable to their conditions and circumstances. Consequently it is presumed that the common law still prevails in all the states that were formed from the colonies which recognized the common law as the source of their jurisprudence, and when one seeks to show that the common law does not at this time exist in such a state, but has been changed by statute, it is incumbent upon the person who asserts a different rule to show that fact by competent evidence.

Such is also the rule as to the states carved out of territory acquired since the time of the Revolution, which had not, at the time of acquisition, any organized form of society, or any established laws for the government of the people then living in such new possessions, where in fact the people of the state at the time of the establishment of government therein were emigrants from the original states. It is presumed that the common law was conveyed and became established there in the same manner that we are authorized to presume that it was brought by the American colonists from the mother country.

But such presumption does not apply to states in which a government and an established system of laws already existed at the time of their addition to the United States. Their original laws remained in force until, by proper authority, they were abrogated and other laws enacted. In states whose system of law was independent of the English law in its origin—such as Florida, Texas, Louisiana and California—there can be indulged no presumption of the existence of the English common law. In countries conquered and ceded to England, the common law does not take effect without positive enactment. *Norris* v. *Harris* (1860), 15 Cal. 226; *Buchanan* v. *Hubbard* (1889), 119 Ind. 187; 1 Blackstone's Comm. *107; Rorer, Interstate Law (2d ed.) 45.

It is a matter of history, that California was once a part of Mexico, and that the Mexican system of civil law was there established. During the Mexican war, California was conquered by the Americans, and for a time was governed by a mixed system of martial and civil law. By the treaty of peace with Mexico, a sum of money was paid to her as a partial remuneration for the territory, including California, ceded by her to the United States. The territory continued under a semi-military government for a short time, and then, Congress having failed to provide a new form of government, a constitutional convention was called by proclamation of Governor Bennett Riley. This proclamation states that "the laws of California, not inconsistent with the laws, constitution and treaties of the United States, are still in force, and must continue in force until changed by competent authority." The constitution of California, adopted at this convention, declares (Art. 12, §1,) that "all laws in force at the time of the adoption of this constitution, and not inconsistent therewith, until altered or repealed by the legislature, shall continue as if the same had not been adopted." This constitution was ratified by the people, was proclaimed on December 20, 1849, and, it having been approved by Congress, California was admitted as a state on September 9, 1850.

In the case of *Fowler* v. *Smith* (1852), 2 Cal. 568, the supreme court of that state said: "When the territory now comprised in the State of California was under Mexican dominion, its judicial system was that of the Roman law, modified by Spanish and Mexican legislation. Upon the formation of the present state government, that system was ordained by a constitutional provision to be continued, until it should be changed by the legislature."

It is thus a historical fact that the civil law prevailed in California at the time of its admission into the

4. Union. Courts take judicial notice of matters of history. They do not take judicial notice of statutes of

other states, and cannot judicially know whether the legislature of California has by statute changed the system of civil law once there established. Thus, the presumption that the common law prevails in California having been removed by the historical fact that the civil law once prevailed there, this court must, as a matter of necessity, decide the case in accordance with our own laws. The present case falls within the rule laid down in the cases of *Buchanan* v. *Hubbard, supra,* and *Norris* v. *Harris, supra,* and will be governed by the law of Indiana; and as under our law the note is valid, the first reason assigned for reversal will not avail appellant.

The second question for consideration is, Do the facts disclosed by the evidence in the present case show that the note was executed under such duress as to render it ineffectual? In the case of *LaFayette, etc., R. Co.* v. *Pattison* (1872), 41 Ind. 312, 327, the Supreme Court of this State made an exhaustive examination of the question of duress of property, and announced its conclusions as follows: "The foregoing authorities very fully establish the propositions, that the doctrine of duress applies to property as well as to the person, and that where one person is in possession of the goods or property of another, and refuses to deliver the same up to that other, unless the latter pays him a sum of money which he has no right to receive, and the latter, in order to obtain possession of his property, pays that sum, the money so paid is a payment by compulsion, and may be recovered back. * * * It is well settled, by an unbroken current of authorities in England and in this country, that money can be recovered back which has been procured through imposition, extortion, or oppression, or where an undue and unconscionable advantage has been taken of the situation or great and pressing necessity of a person, who, by means thereof, has been coerced into the payment, which gives such payment the character of a compulsory payment."

In the case of *Galusha* v. *Sherman* (1900), 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417, after a review of the later authorities, it is said: ''The question in each case is, Was the alleged injured person, by being put in fear by the other party to the transaction for the purpose of obtaining an advantage over him, deprived of the free exercise of his will power, and was such advantage thereby obtained? If the proposition be determined in the affirmative, no matter what the nature of the threatened injury to such person, or his property, * * * the advantage thereby obtained can not be retained. The idea is that what constitutes duress is wholly a matter of law and is simply the deprivation by one person of the will power of another by putting such other in fear for the purpose of obtaining by that means, some valuable advantage of him. The means by which that condition of mind is produced are matters of fact, and whether such condition was in fact produced is usually wholly matter of fact, though of course the means may be so oppressive as to render the result an inference of law. * * * The condition of mind of a person produced by threats of some kind, rendering him incapable of exercising his free will, is what constitutes duress. The means used to produce that condition, the age, sex, and mental characteristics of the alleged injured party, are all evidentiary, merely, of the ultimate fact in issue, of whether such person was bereft of the free exercise of his will power. Obviously, what will accomplish such result cannot justly be tested by any other standard than that of the particular person acted upon. His resisting power, under all the circumstances of the situation, not any arbitrary standard, is to be considered in determining whether there was duress.''

From the evidence in the case, it appears that appellant, who was an attorney, and appellee were husband and wife, living in San Francisco at the time of the earthquake and fire; that their marriage was not generally known, and that she, though living with him in his apartments, kept up sep-

arate apartments; that for a time after the earthquake, they, in company with many others, had lived much of the time in the parks; that on April 29, 1906, appellant, who had been wearing old clothes, went to his apartments to get his good clothes; that appellee had concealed them, and refused to let him have them until he signed the note in question. She testified that she had loaned money to appellant, including the price of the very suit of clothes that he was demanding; that she had borne the living expenses of the household; that he had taken money from her in the park, shortly before coming after his clothes, and in repayment of these amounts the note was given, as, at the time it was signed, she believed that he owed her $153, though she later found that she had forgotten many items, and the amount was really more. Appellant denied that appellee had furnished him money to the amount of more than $10.

Appellant's counsel set up a remarkable argument, the consideration of which somewhat relieves the monotony of the ordinary course of judicial decisions. They claim that appellant, a lawyer in San Francisco, a few days after the earthquake, relying only upon the practice of his profession for a livelihood, would have little opportunity for getting business, or of holding what he had, if he went about his professional duties clothed in a laboring man's garb; that the controlling necessity in the case required that he get suitable wearing apparel, or lose the chance of making a living; that this was one of the times when good clothes were of vital importance to a man; that appellant signed the note, protecting himself from his wife as best he could by writing in the note the words "Not negotiable," in order to get his clothes, which he needed, so that he could properly look after the interests of his clients, and, therefore, the note was signed under duress.

This defense is interesting and ingenuous, and one worthy of a humorist. We know of nothing which requires a man to wear good clothes in order to practice law, and if ever a

lawyer could be excused for wearing old clothes, surely it would be after the San Francisco fire, when he would not be conspicuous by their wearing. It nowhere appears that appellant had any business or any clients requiring his attention, but it rather appears that because he had no business and no clients it was his intention to leave his wife and the city. There is evidence that he was indebted to his wife, and, in this view of the case, the giving of the note could not be payment to her of money which she had no right to receive, but merely a promise to pay money which she had a right to receive. She testified that appellant afterwards acknowledged the note, at least to the extent of offering worthless stocks in exchange for it. We cannot say, as a matter of law, that the withholding of personal property, which if wrongfully withheld could easily be recovered by legal process, constitutes duress, in the case of a lawyer who is supposed to have some acquaintance with the law. Admitting that his resisting power is to be taken into account in determining whether there was duress, we can find nothing to indicate that appellant was, by the refusal of his wife to surrender his clothes, which she had hidden in his own apartments, deprived of his free will to such an extent that he would sign a note when he owed her nothing. The trial court had before it both appellant and appellee, and was able to judge from appearance and actions whether appellant was a man of such weak resisting power that the circumstances attending the signing of the note amounted to duress. It decided that no duress existed. We can find no ground to decide otherwise.

No error appearing in the record, the judgment is 8. affirmed. The death of appellant having been suggested, the cause is affirmed as of date of submission.