[No. A043553. First Dist., Div. Two. Nov. 30, 1989.]

THOMAS J. PORRECO et al., Plaintiffs and Appellants, v.
RED TOP RV CENTER et al., Defendants and Respondents.

COUNSEL

Terry A. Duree for Plaintiffs and Appellants.

Bullen, McKinley, Gay, Keitges & Pach, Lindy H. Scoffield, Norris & Norris, M. Jeffrey Micklas and Nancy E. Hudgins for Defendants and Respondents.

OPINION

KLINE, P. J.—Appellants Thomas J. and Josephine Porreco appeal from the dismissal of their superior court action under Code of Civil Procedure sections 583.310 and 583.360 for failure to bring the case to trial within five

years after the filing of the complaint. Appellants contend that the parties' stipulation to submit the case to arbitration precluded dismissal.

## STATEMENT OF THE CASE AND FACTS

On April 12, 1983, appellants filed a complaint against respondents Red Top RV Center (Red Top) and Citicorp Acceptance Co., Inc. (Citicorp), for rescission, restitution and damages based on a contract to purchase an allegedly defective motor home. The parties engaged in discovery; at-issue and counter at-issue memoranda were filed by appellants and Red Top on April 25 and May 1, 1984, respectively; a trial setting conference was set for July 18, 1984; and Red Top filed an offer to compromise (Code Civ. Proc., § 998) on August 23, 1984.

Subsequently, on December 4, 1984, Red Top filed a cross-complaint for indemnity and contribution against Chrysler Corporation (Chrysler), Champion Home Builders Company (Champion), and Concord Safety Center (Concord). Appellants amended their complaint to add these parties as defendants on January 23 and February 20, 1985.[1] Approximately the next three years (until March 1988) were occupied with the defendants' filing of answers to the amended complaint, additional cross-complaints against each other,[2] and answers to the cross-complaints.[3] Some additional discovery was conducted by Champion during part of 1985.

In June 1987, appellants dismissed Concord (as to plaintiffs' cause of action) and filed another at-issue memorandum; Chrysler and Champion filed counter at-issue memoranda. At a trial setting conference on October 21, 1987, a mandatory settlement conference was set for January 8, 1988, and trial was set for January 25, 1988, a date within five years of the filing of the complaint. On November 23, 1987, the trial court granted a motion for summary adjudication of certain issues in favor of Champion and Champion filed a settlement offer on December 14, 1987. Appellants at some point settled with Chrysler, and this defendant was dismissed on January 6, 1988.

At the settlement conference on January 8, 1988, all parties agreed to submit the matter to binding arbitration. Appellants' counsel drafted a stipulation and order to this effect which provided, among other things, that it would be signed in counterparts. The stipulation, which will later be

---

[1] Appellants also amended their complaint to add additional causes of action based on the original facts on July 3, 1983, and January 23, 1985.

[2] The cross-complaints of Citicorp and Champion also named Cal and Cynthia Stewart as defendants, individually and doing business as Red Top RV Center.

[3] Appellants filed an answer to Red Top's cross-complaint, although they were not named as cross-defendants.

described in greater detail, was signed by Champion and its attorney on February 17, 1988, by Chrysler's attorney on February 26, 1988, by Red Top and its attorney on February 29, 1988, by Citicorp and its attorney on March 18, 1988, and by appellants and their attorney on April 4, 1988. The fifth anniversary of the filing of appellants' complaint was April 12, 1988.

On April 22, 1988, Citicorp filed a motion to dismiss the action pursuant to Code of Civil Procedure sections 583.310 and 583.360 for failure to bring the case to trial within five years of the filing of the complaint. The other respondents subsequently joined in this motion.

On May 3, 1988, the trial court signed the order on the stipulation to arbitration; the stipulation and order were filed on May 4, 1988. The superior court provided the parties with the names of six arbitrators on May 6, 1988. On May 16, 1988, Champion rejected one of the arbitrators and appellants rejected another.

The motion to dismiss was heard on May 25, 1988, and subsequently granted. Judgment was entered on July 11, 1988, and appellants' notice of appeal was filed on September 1, 1988.

DISCUSSION

I.

*The Parties Stipulated to Judicial Arbitration*

■■■ ■■■ Appellants, for the first time on appeal, urge that the parties' stipulation contemplated submission of the case to binding arbitration under the general arbitration statute, Code of Civil Procedure sections 1280 et seq.,[4] rather than under the Judicial Arbitration Act, section 1141.10 et seq.[5] The general arbitration statute governs private arbitration conducted pursuant to an agreement between the parties while the Judicial Arbitration Act provides for "court-annexed" arbitration (*Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 403-404 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109]); the provisions of the two statutory

---

[4] All statutory references will be to the Code of Civil Procedure unless otherwise specified.

[5] Although parties generally may not change the theory of the case for the first time on appeal, the change is permissible if the new theory presents only a question of law on facts appearing in the record. (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738].) The question whether the parties intended their stipulation to refer to the Judicial Arbitration Act or the general arbitration statutes requires only interpretation of the document itself. Where the interpretation of a contract is derived solely from the terms of the instrument, the question is one of law. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 681, p. 615.)

schemes are "mutually exclusive and independent of each other." (§ 1141.30.) Among other differences, private arbitration is by its essence binding while judicial arbitration offers the opportunity for a de novo trial after arbitration has been completed. (38 Cal.3d at p. 402; compare § 1285 et seq. with § 1141.20.)

■ The parties' stipulation must be construed according to the ordinary rules for interpretation of contracts, with the paramount consideration being the parties' objective intention at the time of contracting. (See *Miles* v. *Speidel* (1989) 211 Cal.App.3d 879, 883-884 [259 Cal.Rptr. 582].) ■ ■ Contrary to appellants' argument, it is apparent from the face of the document that the stipulation was drafted—by appellants' counsel—with reference to the Judicial Arbitration Act. First, the stipulation is entitled "Stipulation for Judicial Arbitration; Order Thereon"; had the parties intended general arbitration, there would have been no reason for them to make this express reference to a different statutory scheme. Second, the stipulation specifically states that each party waives the right to a de novo trial after filing of the arbitrator's award "which right is given by Section 1141.20 of the Code of Civil Procedure and Rule 1616 of the California Rules of Court." Not only does this provision make specific reference to a statute which is part of the Judicial Arbitration Act and a rule of court implementing that act, but, since there is no right to de novo trial under the general arbitration statute, there would be no reason to expressly waive that right in a stipulation contemplating general arbitration. Third, the stipulation provides that the arbitration is to be conducted pursuant to the Code of Civil Procedure, California Rules of Court [hereinafter Rules of Court] and local rules of the Solano County Superior Court. While the statutes governing both types of arbitration are contained in the Code of Civil Procedure, the only arbitration provisions in the Rules of Court and local rules pertain to *judicial* arbitration. (Rules of Court, rules 1600-1617; Solano County Local Rules, rule 10.2.)

The fact that the parties stipulated to *binding* arbitration does not take their agreement outside the scope of the Judicial Arbitration Act. While the right to a de novo trial is the principal distinguishing factor between judicial and general arbitration, it is not the only one. (*Blanton* v. *Womancare, Inc., supra,* 38 Cal.3d at pp. 401-402.) For example, parties to private arbitration bear the cost of the arbitration while judicial arbitration is at public expense (*id.,* at p. 402, fn. 5); private arbitration allows discovery only in personal injury cases unless the parties' agreement provides otherwise, while parties to judicial arbitration have full discovery rights (*ibid.*; compare Rules of Court, rule 1612 with § 1283.1); and private arbitration generally dispenses

with the rules of evidence while judicial arbitration follows those rules with certain modifications. (Compare § 1282.2, subd. (d) with rule 1613(b).)

The Supreme Court in *Blanton* considered a stipulation which specifically referred to the Judicial Arbitration Act but provided for binding arbitration to be "something of a hybrid." (38 Cal.3d at p. 402.) Because of the specific reference to the Judicial Arbitration Act, the court took the view that the parties intended an agreement for judical arbitration with advance waiver of the right to request a de novo trial. (*Ibid.*) In that case, the stipulation was held invalid because the attorney had signed it without the client's consent and in fact against her express wishes; the court gave no indication that an agreement to binding judicial arbitration *with* the client's consent would have been improper. In the present case there is no contention that any party objected to the attorneys' stipulation; indeed, the only party which did not have a client signature on the stipulation, Chrysler, was dismissed from the trial court action and is not a party to this appeal.

While the stipulation here is "something of a hybrid," as in *Blanton,* it nevertheless reflects a clear intent to submit the case to arbitration under the Judicial Arbitration Act.[6]

## II.

### *The Five-year Period Was Tolled by the Parties' Stipulation*

The trial court dismissed this action under the mandatory provisions of sections 583.310 and 583.360. Section 583.310 provides that "[a]n action shall be brought to trial within five years after the action is commenced against the defendant." Section 583.360 provides that an action "shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the action is not brought to trial within the time prescribed in this article" and that "[t]he requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute."

The Judicial Arbitration Act contains a provision for tolling of the five-year period as follows: "If an action is or remains submitted to arbitration pursuant to this chapter more than four years and six months after the plaintiff has filed the action, then the time beginning on the date four years

---

[6]Given this conclusion, appellants' reliance on *Preston* v. *Kaiser Foundation Hospitals* (1981) 126 Cal.App.3d 402, 408 [178 Cal.Rptr. 882] and *Gainey* v. *Occidental Land Research* (1986) 186 Cal.App.3d 1051, 1054 [231 Cal.Rptr. 249], which define the dismissal period for contractual arbitration cases as beginning with the date of the order for arbitration, is misplaced.

and six months after the plaintiff has filed the action and ending on the date on which a request for a de novo trial is filed under Section 1141.20 shall not be included in computing the five-year period specified in Section 583.310." (§ 1141.17.)[7] Appellants contend that this provision should have worked to preclude dismissal of their action.

A. *The case was submitted to arbitration within five years of the date of the complaint.*

■ The parties vigorously dispute whether this case was actually "submitted to arbitration" before the five-year period expired on April 12, 1988. Appellants urge that it was, since the parties signed the stipulation to arbitrate on or before April 4, 1988. Respondents contend that the stipulation was *not* signed by all within the five-year period and was not executed until the court signed and filed the stipulation on May 3 and 4, after expiration of the five-year period.[8]

The trial court found that all parties agreed to arbitration on January 8 and signed the stipulation on or before April 4, 1988. The record supports this finding. Respondents Champion and Citicorp contend that the stipulation was *not* signed by all of the parties because Champion did not sign the final version of the stipulation that was submitted to the court. Champion did, however, sign a draft stipulation on February 17, 1988, which was identical in substance to the final stipulation signed by the other parties.[9] To

---

[7] Section 1141.20 provides: "(a) An arbitration award shall be final unless a request for a de novo trial is filed within 30 days after the date the arbitrator files the award with the court. (b) Any party may elect to have a de novo trial, by court or jury, both as to law and facts. Such trial shall be calendared, insofar as possible, so that the trial shall be given the same place on the active list as it had prior to arbitration, or shall receive civil priority on the next setting calendar."

[8] Respondents' contentions differ. Citicorp contends that the parties' stipulation was never fully executed; Redtop contends that the stipulation was not effective until signed and filed by the court because the parties intended the court's approval to be a prerequisite to effectiveness; and Champion contends that cases can only be submitted to arbitration by court order.

[9] There are two differences between the forms of the stipulations. First, the form which Champion signed did not contain signature lines for Calvin and Cynthia Stewart, who had been named as cross-defendants individually and doing business as Red Top. Second, Champion interlineated three words into paragraph 5 of the form it signed which were typed into the final versions signed by the other parties: "The arbitrator of this matter is to be bound by *rulings made by* the Superior Court which adjudicate and establish any issues involved in this case." As for the wording change, Champion's cover letter to appellants' counsel demonstrates that Champion intended the stipulation it signed to be filed with the interlineation, and the final drafts signed by the other parties incorporated the clarifying language precisely as Champion had inserted it.

The inclusion of signature lines for the individual defendants was considered necessary in order to comply with the decisions in *Blanton* v. *Womancare, Inc., supra,* 38 Cal.3d 396 and *Sanker* v. *Brown* (1985) 167 Cal.App.3d 1144 [213 Cal.Rptr. 768], which dealt with attor-

allow Champion to avoid the consequences of its stipulation when nothing in the terms of the stipulation had changed would be to exalt form over substance.

Because all the parties signed the stipulation before the end of the five-year period, respondents' reliance on *Roozen* v. *Ramstead* (1981) 124 Cal.App.3d 332 [177 Cal.Rptr. 276] is misplaced. In *Roozen,* the parties orally agreed to submit the case to arbitration about a month before expiration of the five-year period, but plaintiff did not sign a stipulation to that effect until a month after expiration of the period, and defendants never signed. (*Id.,* at p. 333.) Additionally, *Roozen* was a case which would not have been subject to tolling even if all parties *had* signed the stipulation within the dismissal period because the statute then in effect did not allow for tolling of cases voluntarily submitted to arbitration. As will be seen, the tolling provision now does apply to such cases.

The fact that the trial court signed and filed the stipulation after expiration of the five-year period also cannot allow respondents to avoid its effect. Respondent Champion cites two cases for the proposition that a court order is required for submission to arbitration, *Moran* v. *Superior Court* (1983) 35 Cal.3d 229 [197 Cal.Rptr. 546, 673 P.2d 216] and *Crawford* v. *Hoffman* (1982) 132 Cal.App.3d 1015 [183 Cal.Rptr. 599]. These cases interpreted the phrase "submitted to arbitration" in section 1141.17 at a time when the statute referred to cases submitted to arbitration "pursuant to court order." As will be discussed in part II.B., *post,* the statute has since been amended to refer instead to cases submitted "pursuant to this chapter," which includes elected and stipulated arbitration. In light of the change in the statute, the concept of submission to arbitration can no longer be limited to cases submitted by court order.

Rather, the rules governing arbitration by stipulation make clear that the date such a case is considered submitted to arbitration depends on the parties' action. (See *Davenport* v. *Vido Artukovich & Son, Inc.* (1983) 141 Cal.App.3d 60, 65-66 [190 Cal.Rptr. 64] [no court order for cases submitted to arbitration by stipulation or plaintiff's election]; Practicing Cal. Judicial Arbitration (Cont.Ed.Bar 1983) § 2.17, pp. 24-25 [date of submission to arbitration is date court orders matter to arbitration or parties stipulate to

---

neys' *unauthorized* signing of stipulations waiving their clients' rights to de novo trials under the Judicial Arbitration Act. Both cases require the client's consent for a valid stipulation to binding arbitration, and *Sanker* specifically recommends that a client signature line be included in such stipulations. (167 Cal.App.3d at p. 1147.) In the present case, there is no suggestion of any client's repudiation of the agreement, and the Stewarts did sign the stipulation on February 29, 1988. That their signatures were not on the actual form Champion signed is of no moment, since the stipulation provided for signature in counterparts.

arbitration].) Section 1141.12, subdivision (a) provides that in courts in which arbitration may be had pursuant to section 1141.11, subdivisions (a) or (b), "upon stipulation of the parties, any at-issue civil actions *shall be submitted* to arbitration regardless of the amount in controversy." (Italics added.)[10] Under Rules of Court, rule 1601(a), "[w]hen the parties stipulate to arbitration, the action shall be placed on the arbitration hearing list forthwith." Neither the statute nor the rule appear to contemplate action by the court being necessary to effectuate the parties' stipulation to submit to arbitration. Indeed, since section 1141.12, subdivision (a) does not appear to contemplate that a court may refuse to submit a case in which the parties have stipulated to arbitration, the court's "order" on such a stipulation must be deemed a ministerial act.

It is also instructive to compare the language of section 1141.12, subdivision (a) quoted above with that of section 1141.11, concerning mandatory arbitration: section 1141.11, subdivision (a) provides that the specified cases "shall be submitted to arbitration, *by the presiding judge or the judge designated*" (italics added), while section 1141.12 makes no reference to submission by a judge. *Davenport, supra,* cited this difference in language as support for its determination that cases submitted to arbitration by stipulation or election are not "court ordered," noting that "although trial courts do issue (minute) orders diverting section 1141.11 cases to arbitration, there is no practice known to us by which any court order is issued submitting cases to arbitration through either stipulation or election." (141 Cal.App.3d at pp. 65-66.) Had the Legislature intended court action to be necessary to effectuate stipulations to arbitration, it could and would have so provided. Since it did not, a stipulation to submit a matter to judicial arbitration must be considered effective when it is signed by the parties.[11]

---

[10] Section 1141.11, subdivision (a) provides that in superior courts with 10 or more judges, all at-issue civil cases with an amount in controversy not exceeding $50,000 per plaintiff *must* be submitted to arbitration. Section 1141.11, subdivision (b) provides that superior courts with less than 10 judges may provide by local rule that all at-issue civil actions must be submitted to arbitration if the amount in controversy does not exceed $50,000 per plaintiff. The Solano County Superior Court has provided for arbitration pursuant to section 1141.11, subdivision (b) in local rule 10.2.

[11] Respondent Red Top's contention that the stipulation was not effective until signed and filed by the court because the parties intended that the stipulation would not be effective until the attached order was executed by the court is unavailing. Regardless whether the parties believed court action was necessary to effectuate the stipulation, the fact remains that the court's order was not required and at best a ministerial act.

B. *The tolling provision of section 1141.17, subdivision (b) applies to this case.*

1. *Tolling applies in cases voluntarily submitted to arbitration.*

■ Respondents Champion and Citicorp contend that the provisions of section 1141.17, subdivision (b) do not apply to this case because the tolling provision only applies to cases mandatorily submitted to arbitration. These contentions are based on the decision in *Moran* v. *Superior Court, supra,* 35 Cal.3d 229, and other case law interpreting section 1141.17 at a time when it read as follows: " 'Submission of an action to arbitration pursuant to this chapter [ch. 25—Judicial Arbitration] shall not toll the running of the time periods contained in Section 583 as to actions filed on or after the operative date of this chapter [July 1, 1979]. Submission to arbitration *pursuant to a court order* within six months of the expiration of the statutory period shall toll the running of such period *until the filing of an arbitration award.*' " (35 Cal.3d at p. 234, fn. 5, italics added.)

The Supreme Court in *Moran* held that the phrase "pursuant to a court order" in section 1141.17 limited application of the tolling provision to cases mandatorily submitted to arbitration. (35 Cal.3d at p. 235, fn. 5.) In so doing, the court adopted the reasoning of two of the other cases respondents rely upon, *Davenport* v. *Vido Artukovich & Son, Inc., supra,* 141 Cal.App.3d 60, and *Taylor* v. *County of San Bernardino* (1983) 143 Cal.App.3d 42 [191 Cal.Rptr. 518]. The courts in these three cases noted that tolling was necessary for cases ordered to arbitration because there is no way to ensure the court will submit the cases early enough to allow arbitration within the five-year period, but unnecessary with consensual arbitration because the timing of initiating such arbitration is within the parties' control. Further, the courts also noted in these cases that it would be unwise as a matter of policy to afford protection from dismissal to litigants who wait until the tail end of the five-year period and then institute arbitration by unilateral election. (*Moran, supra,* 35 Cal.3d at p. 235, fn. 5, quoting *Davenport, supra,* 141 Cal.App.3d at pp. 64-65; *Taylor, supra,* 143 Cal.App.3d at pp. 46-47.)

In 1983, after these cases had been decided, section 1141.17 was amended to replace the phrase "pursuant to court order" with "pursuant to this chapter." "This chapter"—the Judicial Arbitration Act—includes cases submitted to arbitration by stipulation and by plaintiff's election as well as by court order. *Lazelle* v. *Lovelady* (1985) 171 Cal.App.3d 34, 43 [217 Cal.Rptr. 145] therefore reached the obvious conclusion that the effect of this amendment was to make the tolling provision apply whenever an action is submitted to judicial arbitration, regardless whether this is accomplished by court order.

Champion and Citicorp, however, continue to rely on *Moran, Davenport,* and *Taylor*. Champion does not appear aware of the amendment of section 1141.17. Citicorp urges that the amendment was intended primarily to alter a different portion of the *Moran* decision and not to render the tolling period applicable to all cases submitted to arbitration.[12] Rather than give effect to the Legislature's choice of words in the current statute, we are asked to follow the reasoning described above, by which the preamendment cases explained the then express limitation of tolling to court-ordered arbitration cases. We decline to do so. As presently worded, the tolling provision of section 1141.17 applies to all cases submitted to arbitration "pursuant to this chapter." We cannot ignore this language.

## 2. *Tolling applies in cases submitted to binding arbitration.*

■ Citicorp also urges that the section 1141.17 tolling provision is inapplicable in the present case because the parties waived their rights to a de novo trial. Citicorp focuses on section 1141.17, subdivision (b)'s provision that the tolling period ends "on the date on which a request for a de novo trial is filed." Citicorp reads this language to mean that only actions submitted to arbitration which is subject to the right to a de novo trial will be tolled because "[a]ny other construction results in § 1141.17(a) being superfluous." Section 1141.17, subdivision (a) states generally that submission of actions to judicial arbitration will not suspend the running of the dismissal statutes' time periods except as specified.

Contrary to respondent's suggestion, it is not necessary to find that only actions subject to the right to a de novo trial may be tolled in order to give effect to section 1141.17, subdivision (a). A straightforward reading of the entire statute reveals simply that submission to judicial arbitration does not toll the dismissal time periods except for cases submitted to or remaining in arbitration during the last six months of the period. The reference to a request for a de novo trial in section 1141.17, subdivision (b) is most easily read as defining the period of tolling rather than as limiting the types of actions to be tolled. Just as the Legislature once limited the tolling provision to actions submitted to arbitration "pursuant to court order," it could have expressly limited tolling to cases subject to a right to de novo trial if it had so intended.

---

[12] Respondent refers to *Moran*'s holding that the time between filing of an arbitration award and the date set for a trial de novo must be excluded in calculating the five-year dismissal period. (35 Cal.3d at p. 242.) When *Moran* was decided, section 1141.17, subdivision (b) provided that submission to arbitration by court order would toll the running of the section 583 time period "until the filing of an arbitration award." As amended, the statute provides for tolling "beginning on the date four years and six months after the plaintiff has filed the action and ending on the date on which a request for a de novo trial is filed under Section 1141.20."

Respondent's reliance on *Dodd* v. *Ford* (1984) 153 Cal.App.3d 426 [200 Cal.Rptr. 256] for this point is misplaced. *Dodd,* like the present case, involved a stipulation to submit to binding arbitration. (*Id.,* at p. 428.) That case actually went to arbitration within the five-year period, but the arbitration hearing was terminated on the second day by the arbitrator and the parties did not take the action required to restore the case to the arbitration list or the civil active list. The appellate court reversed the dismissal of the action in part because it considered the abbreviated arbitration hearing equivalent to commencement of trial, precluding dismissal under the five-year statute. (*Id.,* at pp. 429-430.)

Respondent characterizes *Dodd* as determining that the section 1141.17 tolling provision is inapplicable to binding arbitration cases because such cases do not entail a right to request a trial de novo. In fact, *Dodd* found this tolling provision inapplicable without discussion, on the basis of *Moran*'s holding that under the version of the statute then in effect there was no tolling if the parties stipulated to arbitration. (153 Cal.App.3d at p. 429.) The *Dodd* court's distinction between binding and nonbinding arbitration came in the context of the argument that the aborted arbitration hearing should be considered the commencement of trial. An earlier decision had rejected such an argument in a case where the parties had not waived the right to request a trial de novo. (*Brown* v. *Engstrom* (1979) 89 Cal.App.3d 513 [152 Cal.Rptr. 628].) *Dodd* held that where the right to return to the superior court had been waived and it was clear the matter would be finally resolved through arbitration, there was no reason not to equate the abbreviated proceedings with commencement of trial so as to preclude dismissal. (153 Cal.App.3d at p. 430.)

We are aware of no case specifically considering the application of section 1141.17 to an action involving a stipulation to binding arbitration. *Dodd*'s discussion of the effect of such a stipulation, however, tends to support the view that the tolling provision applies to cases submitted to binding as well as nonbinding arbitration. Under *Dodd,* parties can avoid mandatory dismissal by bringing their case to trial *or* to binding arbitration proceedings before expiration of the five-year period. (153 Cal.App.3d at p. 430.) Section 1141.17, subdivision (b) ensures that parties will be able to bring their case to *trial* within the dismissal period even if they decide to submit the case to arbitration near the end of that period. When parties agree to binding arbitration, tolling is similarly necessary to ensure the opportunity to begin the *arbitration proceedings* before expiration of the dismissal period.[13]

---

[13] Citicorp's reliance upon *Kuzmonoff* v. *Kron* (1988) 207 Cal.App.3d Supp. 1 [255 Cal.Rptr. 168], for the proposition that a stipulation for binding arbitration does not toll the five-year period, is misplaced. *Kuzmonoff* does not deal with issues of tolling and, as Citicorp acknowledges, does not refer to section 1141.17. This absence of reference follows from the

Consideration of the overall policies behind the act supports this view. The act proclaims a strong policy in favor of resolving smaller civil disputes through arbitration whenever possible, to reduce the delay and expense of litigating such disputes. (§ 1141.10.) This policy would appear to be furthered especially well when parties agree to binding arbitration: Where parties retain their rights to request a trial de novo, both the potential cost and the potential time period before resolution of the dispute are greater than where the possibility of litigation following the arbitrator's award has been eliminated. Under section 1141.17, subdivision (b), cases submitted to nonbinding arbitration may continue well beyond the five-year limit, through resolution of both the arbitration and subsequent trial; if tolling is limited to nonbinding arbitration cases, a case submitted to binding arbitration would have to be dismissed if the arbitration is not actually commenced within the five-year period. It would be anomalous if the tolling provision worked in this way to allow parties ample time for arbitration when they had reserved the possibility of recourse to the courts but not allow them much time if they agree to the more economical and efficient process of binding arbitration.

We recognize that the effect of submission to arbitration on the eve of expiration of the dismissal period is to undermine both the five-year rule and arbitration's purpose of resolving disputes promptly and economically. (See *Lazelle* v. *Lovelady, supra,* 171 Cal.App.3d at p. 40.) In particular, courts have noted that because cases entering arbitration after years of litigation have usually incurred much greater expense and labor than newly filed ones, " 'it would seem unwise policy to encourage a delay in commencement of arbitration by permitting a plaintiff . . . to wait until the eleventh hour in the statutory life of an action before instituting arbitration by unilateral election while enjoying the protection of the tolling of the diligent prosecution statute.' " (*Moran* v. *Superior Court, supra,* 35 Cal.3d at p. 235, fn. 5, quoting *Davenport* v. *Vido Artukovich & Son, Inc., supra,* 141 Cal.App.3d at pp. 64-65.) Thus, courts have taken a skeptical view of attempts to submit to use arbitration as a " 'last-minute escape hatch from the diligent prosecution statute . . . .' " (*Sisler* v. *Superior Court* (1988) 205 Cal.App.3d 864, 868 [252 Cal.Rptr. 665], quoting *Davenport, supra,* 141 Cal.App.3d at p. 66.)[14] Cases in which the plaintiff unilaterally elects

fact that *Kuzmonoff* involved a stipulation for arbitration under the general arbitration statutes. The issue of tolling under section 1141.17 arises in the present case because the parties stipulated to arbitration under the Judicial Arbitration Act.

[14]*Sisler* and *Davenport* both present very different factual situations from the present case. In *Sisler,* the trial court granted plaintiff's motion for referral to arbitration on the last day of the five-year period solely because that period was about to expire. The appellate court held that all the factors relevant to discretionary dismissal (including ones such as the parties' diligence and nature of delay attributable to either, complexity of the case, and others) should

arbitration late in the game are particularly at odds with the five-year rule, since one of the purposes of that rule is to " 'protect defendants from being subjected to the annoyance of an unmeritorious action remaining undecided for an indefinite period of time.' " (*Lazelle* v. *Lovelady, supra,* 171 Cal.App.3d at p. 40, quoting *Moran, supra,* at p. 237.) Even in these cases, however, the negative consequences of late arbitration are tempered by the "clear legislative and judicial preference for resolution of claims by arbitration, and for disposing of litigation on the merits rather than on procedural grounds." (*Lazelle, supra,* at p. 40.) Where, as in the present case, the parties stipulate to arbitration, there is considerably less reason for concern with delay because since there is no unfairness to the defendants.[15]

In sum, we decline to adopt an interpretation of the tolling statute which would penalize parties for taking action which furthers legislative and judicial policy. We thus read section 1141.17, subdivision (b)'s reference to "request for a de novo trial" as intended to define the duration of the tolling period and not to limit the type of action subject to tolling.

In other words, by waiving the right to trial de novo, the parties in this case rendered meaningless only that part of the statute defining the *end* of the tolling period. The part that defines the *commencement* of that period (in terms of when the action was submitted to arbitration), which bears most immediately on the question whether tolling applies, remains meaningful. In the context of binding arbitration the fact that there will be no trial makes it unnecessary to define an end point for the tolling period. Under section 1141.17, subdivision (b), the dismissal period is always tolled during the period of arbitration; this tolling is sufficient to ensure that an action that is or remains submitted to arbitration within the last six months of the dismissal period can go to arbitration without running afoul of the five-year rule. We caution, however, that this tolling provision does not

---

have been considered, to avoid allowing a plaintiff who had not diligently prosecuted the case to use arbitration as an escape hatch from dismissal. (205 Cal.App.3d at p. 868.) Here, the parties mutually agreed to arbitration and there has been no suggestion of lack of diligence.

In *Davenport,* the plaintiff unilaterally elected arbitration with 14 days remaining in the 5-year period. The section 1141.17 tolling provision did not apply because at the time the case was decided the statute only provided for tolling of court-ordered arbitration cases (141 Cal.App.3d at pp. 63-66) and the court concluded that it would frustrate the legislative purpose of both the diligent prosecution and the judicial arbitration statutes to allow plaintiff to escape dismissal. In the present case, the tolling provision *does* apply and, again, the submission to arbitration was by mutual agreement.

[15]Respondent Red Top urges that this case was properly dismissed because the parties' stipulation did not expressly provide for tolling or extension of the five-year rule. (Letter brief of Aug. 24, 1989.) The rule that parties may agree to extend the five-year rule only in writing or in open court (§ 583.330), however, has no application to a case tolled under section 1141.17, since the statute tolls the dismissal period by operation of law rather than by the parties' intent.

countenance a lack of diligence in pursuing the arbitration proceeding to conclusion after the action had been submitted to arbitration. Cases involving nonbinding arbitration impose on plaintiffs a continuing duty of reasonable diligence to secure a trial date before expiration of the extended five-year period. (See *Santa Monica Hospital Medical Center* v. *Superior Court* (1988) 203 Cal.App.3d 1026, 1031-1035 [250 Cal.Rptr. 384].)[16] Plaintiffs in binding arbitration cases must bear an analogous duty to ensure that the arbitration proceedings begin in a timely fashion. (See discussion, *post,* at pp. 130-136.)

It may be noted that the general equities in this case further militate against dismissal. This is not a case in which issues have been raised regarding appellants' diligence in prosecuting their action or in which appellants waited until the end of the dismissal period and then unilaterally submitted the case to arbitration. (See *Sisler* v. *Superior Court, supra,* 205 Cal.App.3d 864, 867-868.) Rather, the parties all stipulated to submit to binding arbitration and reduced this stipulation to writing. When the agreement was reached at the settlement conference in January, a trial date within the five-year period had already been set. By agreeing to stipulate in writing, respondents induced appellants to embark on a course of action which would obviate the possibility of a trial within the five-year period; respondents then signed the stipulation knowing that expiration of the statutory period was at most two months away. ■ While the plaintiff has an affirmative duty to see that a case is brought to trial within five years (*Taylor* v. *Hayes* (1988) 199 Cal.App.3d 1407, 1410 [245 Cal.Rptr. 613]), it would be an unfair boon to respondents if they could agree to arbitration at this stage in the proceedings and then avoid the effect of their stipulation.[17]

---

[16] This issue of reasonable diligence arises in the context of cases interpreting section 1141.20, subdivision (b), which hold that for cases submitted to nonbinding arbitration the five-year period is tolled until the postarbitration trial date set by the court. (*Moran* v. *Superior Court, supra,* 35 Cal.3d at pp. 241-242; *Santa Monica Hospital Medical Center, supra,* 203 Cal.App.3d at p. 1031.) Section 1141.20, subdivision (b) provides that if a de novo trial is requested, the trial must be given the same place on the active list as it had prior to arbitration or receive priority on the next setting calendar (§ 1141.20, subd. (b)); since the parties cannot control when the trial will be calendared, the five-year dismissal period must be tolled until the postarbitration date set by the trial court. (*Moran* v. *Superior Court, supra,* 35 Cal.3d at pp. 241-242; *Santa Monica Hospital Medical Center, supra,* 203 Cal.App.3d at p. 1031.) While there is some authority that the tolling period should extend until the postarbitration hearing date regardless of the plaintiff's conduct (e.g., *Barna* v. *Passage 350 Canon* (1986) 186 Cal.App.3d 440, 444-448 [230 Cal.Rptr. 764]), the better reasoned cases require the plaintiff to exercise reasonable diligence in notifying the court of the time frame of the case. (E.g., *Santa Monica Hospital Medical Center* v. *Superior Court, supra,* 203 Cal.App.3d at pp. 1031-1035; *Hill* v. *Bingham* (1986) 181 Cal.App.3d 1, 8-9, 11-12 [225 Cal.Rptr. 905].)

[17] Having concluded that the five-year period was tolled under section 1141.17, subdivision (b), we need not reach appellants' argument that the period was tolled under the implied exception to sections 583.310 and 583.360 for tolling during the time the superior court is without jurisdiction to hear the case on the merits. It is also unnecessary for us to consider appel-

### III.

### The Stipulation for Binding Arbitration Could Have Been Independently Enforced

 *Dodd* v. *Ford, supra,* suggests an alternative means to reach a similar result. *Dodd* found that once the parties stipulated to binding arbitration, the pleadings in the civil action had fulfilled their purpose and became "virtually functus officio"; the dismissal of the civil action did not terminate the vitality of the arbitration because the arbitration agreement could be independently enforced without reference to the complaint and cross-complaint. (153 Cal.App.3d at pp. 431-432.)

It is not clear from the opinion in *Dodd* whether the stipulation there, as here, was clearly one for judicial arbitration. Assuming that it was, since the opinion discusses provisions of the Judicial Arbitration Act (153 Cal.App.3d at pp. 429-431), *Dodd* found no inconsistency in holding that a stipulation for judicial arbitration could be enforced under the general arbitration statutes. Rather, the court concluded that the parties' waiver of the right to a de novo trial rendered the proceedings a "true arbitration," to be conducted under the auspices of the superior court instead of the American Arbitration Association. The court noted, however, arbitration compelled on motion to enforce the stipulation (§ 1281.2) would be outside the judicial arbitration scheme and at the expense of the parties.

We agree that a written stipulation to submit to binding arbitration, even one intended to be governed by the Judicial Arbitration Act, is independently enforceable. Certainly such a stipulation comes within the definition in section 1281, which states that "[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Given that the arbitration, if enforced under the general arbitration statutes, would be at the parties' expense, the references in the stipulation here to provisions of the Judicial Arbitration Act would serve to define the evidentiary and other rules to govern the arbitration. This is not inconsistent with the statutory scheme. In instances where the general arbitration statutes specify more limited procedures than the Judicial Arbitration Act, such as discovery rights, they nevertheless allow parties to choose procedures generally equivalent to those applicable in a judicial arbitration. (Compare § 1283.1, subd. (b) with Rules of Court, rule

lants' argument that discretionary dismissal would also have been improper, as the issue was never raised in the trial court.

1612 [depositions and discovery].)[18] In instances where judicial arbitration is more limited, such as application of the rules of evidence, there is no reason to preclude parties from choosing to abide by the more limited rules. (Compare $ 1282.2, subd. (d) with Rules of Court, rule 1613(b).) Even if the complaint in this case had been properly dismissed, then, the parties would be bound to arbitrate this controversy and the superior court would retain the role of hearing motions to compel arbitration and enforce any award. (*Dodd* v. *Ford, supra,* 153 Cal.App.3d at p. 432.)

The judgment dismissing the complaint is reversed.

Benson, J., and Peterson, J., concurred.

A petition for a rehearing was denied December 21, 1989.

---

[18] The general arbitration statutes automatically provide for discovery only in arbitration of personal injury cases (§§ 1283.05, 1283.1, subd. (a)) but allow parties to incorporate the discovery provisions into any arbitration agreement. (§ 1283.1, subd. (b).) The discovery provisions specified are not identical to those specified for judicial arbitration: Section 1283.1 allows parties to a general arbitration to agree to take depositions and obtain discovery with the same rights and duties as provided in sections 1985-1997 (subpoena) and sections 2016-2036 (Civil Discovery Act); Rules of Court, rule 1612 provides that parties to a judicial arbitration may take depositions and obtain discovery with the same rights and duties as provided in sections 2002-2036 (sections 2002-2005 define modes of taking testimony; sections 2009-2025 concern use of affidavits). Since the provisions which would apply under judicial arbitration but not under general arbitration do not add in substance to the parties' rights, it does not appear inconsistent to allow parties to enforce under the general arbitration statutes an agreement specifying judicial arbitration rules.