TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-912 |
| of | : | |
| | : | December 27, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE TIM LESLIE, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1. Does the common law immunity from civil liability for judicial officers apply to judicial and private arbitrators?

2. Did the enactment or repeal of statutory immunity from civil liability for arbitrators affect the common law immunity from civil liability for judicial and private arbitrators?

CONCLUSIONS

1. The common law immunity from civil liability for judicial officers applies to judicial arbitrators; it also applies to private arbitrators when the latter are acting in their quasi-judicial capacities.

2. The enactment of statutory immunity from civil liability for arbitrators did not affect the immunity applicable to judicial arbitrators, but did expand the scope of immunity for private arbitrators to that applicable to judicial officers. The statute's repeal reinstated the common law immunity for the quasi-judicial acts of private arbitrators.

1.                                                                        96-912

ANALYSIS

The two questions presented for consideration concern the nature and extent of "common law" and statutory law immunity from civil suit for arbitrators conducting judicial and private arbitrations. Before addressing each question individual, we note the definitions of the terms involved in the two inquiries. "Arbitration is the submission for determination of a disputed matter to private unofficial persons selected in the manner provided by law or by agreement of the parties." (*Stockwell* v. *Equitable F. & M. Ins. Co.* (1933) 134 Cal.App. 534, 540; accord, *Howard* v. *Drapkin* (1990) 222 Cal.App.3d 843, 854, fn. 5; see 70 Ops.Cal.Atty.Gen. 203, 204 (1987).) "[A]ttributes of a true arbitration agreement [are]: (1) a third party decisionmaker; (2) a mechanism for ensuring neutrality with respect to the rendering of the decision; (3) a decisionmaker who is chosen by the parties; (4) an opportunity for both parties to be heard, and (5) a binding decision." (*Cheng-Canindin* v. *Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 684.) "California's first arbitration statute was enacted in 1851." (*Coopers & Lybrand* v. *Superior Court* (1989) 212 Cal.App.3d 524, 530.) "Arbitration has evolved into a favored method for the resolution of disputes." (*Thiele* v. *RML Realty Partners* (1993) 14 Cal.App.4th 1526, 1531.)

There are two types of arbitrations: judicial and private. Judicial arbitrations, sometimes known as "court-annexed" arbitrations, are conducted under the Judicial Arbitration Act (Code Civ. Proc., §§ 1141.10-1141.31). (*Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 403-404; *Porreco* v. *Red Top RV Center* (1989) 216 Cal.App.3d 113, 118-119; *Sisler* v. *Superior Court* (1988) 205 Cal.App.3d 864, 867; *Demirgian* v. *Superior Court* (1986) 187 Cal.App.3d 372, 375.)[1] "Along with its goal of resolving small claims efficiently and affordably, judicial arbitration is intended to ease court case loads." (*Flynn* v. *Gorton* (1989) 207 Cal.App.3d 1550, 1555; accord, *Crampton* v. *Takegoshi* (1993) 17 Cal.App.4th 308, 319.)

Private arbitrations, also known as "general," "contractual," "nonjudicial," "commercial," and "true" arbitrations, are based upon the agreement of the parties and are conducted under a separate statutory scheme, sections 1280-1294.2. (*Blanton* v. *Womancare, Inc., supra*, 38 Cal.3d at 402; *Valsan Partners Ltd. Part.* v. *Calcor Space Facility, Inc.* (1994) 25 Cal.App.4th 809, 816; *Crampton* v. *Takegoshi, supra*, 17 Cal.App.4th at 319; *Porreco* v. *Red Top RV Center, supra*, 216 Cal.App.3d at 118-120; *Baar* v. *Tigerman* (1983) 140 Cal.App.3d 979, 984.)

Numerous distinctions exist between judicial and private arbitrations (*Blanton* v. *Womancare, Inc., supra*, 38 Cal.3d at 401-402; *Crampton* v. *Takegoshi, supra*, 17 Cal.App.4th at 319; *Porreco* v. *Red Top RV Center, supra*, 216 Cal.App.3d at 118-119), and "other than Section 1280.1," the two statutory schemes "are mutually exclusive and independent of each other" (§ 1140.30).[2]

---

[1] Unidentified section references hereinafter are to the Code of Civil Procedure.

[2] The provisions of section 1280.1 are discussed below in response to the second question.

Immunity from civil liability for judicial officers "bars civil actions against judges for acts performed in the exercise of their judicial functions and it applies to all judicial determinations, including those rendered in excess of the judge's jurisdiction, no matter how erroneous or even malicious or corrupt they may be." (*Howard* v. *Drapkin*, *supra*, 222 Cal.App.3d at 851, fn. omitted; see *Greene* v. *Zank* (1984) 158 Cal.App.3d 497, 507.) The purpose of granting immunity to judges for their judicial acts is to prevent intimidation and foster "principled and fearless decision-making." (*Pierson* v. *Ray* (1967) 386 U.S. 547, 554; see *Hardy* v. *Vial* (1957) 48 Cal.2d 577, 582-583; *Thiele* v. *RML Realty Partners*, *supra*, 14 Cal.App.4th at 1531; *Baar* v. *Tigerman*, *supra*, 140 Cal.App.3d at 982.) As stated in *Howard* v. *Drapkin*, *supra*, 222 Cal.App.3d at 852:

> ". . . The public is best served when its judicial officers are free from fear of personal consequences for acts performed in their judicial capacity. [Citation.] `If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. [Citation.] The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.' [Citation.] `It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.' [Citation.] `"The justification for [judicial immunity] is that it is impossible to know whether [a person's claim against an official] is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."' [Citations.] Thus, the protection must be absolute, even to the malicious or corrupt judge. The effect of judicial immunity is that the action against the judicial officer must be dismissed. [Citation.]"

While granting judicial immunity from civil liability protects the finality of a judge's decision by preventing a collateral attack, a party may of course seek reversal of the decision by an appellate court in case of abuse or error. (*Ibid.*)

1.      Common Law Immunity

The first question to be resolved is whether the common law immunity from civil liability for judicial officers applies to judicial and private arbitrators. We conclude generally that it does.

At its first session following the formation of a state government, the Legislature adopted the common law of England as the basis for the state's jurisprudence. (*Fowler* v. *Smith* (1852) 2 Cal. 568, 568-569; 66 Ops.Cal.Atty.Gen. 293, 295 (1983).) Civil Code section 22.2 now provides: "The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of

the United States, or the Constitution or laws of this state, is the rule of decision in all courts of this State."

"The concept of judicial immunity is long-standing and absolute, with its roots in English common law." (*Howard* v. *Drapkin, supra*, 222 Cal.App.3d at 851.) With respect to whether common law judicial immunity extends to judicial arbitrators, the *Howard* court found:

". . . Thus, we believe it appropriate that these `nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process' [citation] should be given absolute quasi-judicial immunity for damage claims arising from their performance of duties in connection with the judicial process. Without such immunity, such persons will be reluctant to accept court appointments or provide work product for the courts' use. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"We therefore hold that absolute quasi-immunity is properly extended to these neutral third parties for their conduct in performing dispute resolution services which are connected to the judicial process and involve either (1) the making of binding decisions, (2) the making of findings or recommendations to the court or (3) the arbitration, mediation, conciliation, evaluation or other similar resolution of pending disputes." (*Id*., at pp. 857-860.)

Accordingly, the common law immunity from civil liability for judicial officers applies to judicial arbitrators. In case of abuse or error, judicial arbitration awards may be corrected, modified, or vacated (§ 1141.22), and "[a]ny party may elect to have a de novo trial, by court or jury, both as to law and facts" (§ 1141.29, subd. (b)). (See *Blanton* v. *Womancare, Inc., supra*, 38 Cal.3d at 401; *Crampton* v. *Takegoshi, supra*, 17 Cal.App.4th at 319; *Porreco* v. *Red Top RV Center, supra*, 216 Cal.App.3d at 119; *Demirgian* v. *Superior Court, supra*, 187 Cal.App.3d at 375.)

With regard to private arbitrations, courts recognized early on that contractual arbitrators serve in a quasi-judicial capacity[3] and extended judicial immunity to private arbitrators functioning in such capacity. (*Coopers & Lybrand* v. *Superior Court, supra*, 212 Cal.App.3d at 534.) Common law immunity is extended to all functions that are "integrally related to the arbitral process." (*Thiele* v. *RML Realty Partners, supra*, 14 Cal.App.4th at 1530, citing *Austern* v. *Chicago Bd. Options Exchange, Inc.* (2d Cir. 1990) 898 F.2d 882, 886.)

---

[3] In determining whether a person is acting in a quasi-judicial fashion, the courts look at the nature of the duty performed to determine whether it is a judicial act--not the name or classification of the officer who performs it. (*Thiele* v. *RMC Realty Partners, supra*, 14 Cal.App.4th at 1530; *American Arbitration Assn.* v. *Superior Court* (1992) 8 Cal.App.4th 1131, 1134; *Howard* v. *Drapkin, supra*, 222 Cal.App.3d at 853-854; *Coopers & Lybrand* v. *Superior Court, supra*, 212 Cal.App.3d at 534.)

In *Baar* v. *Tigerman, supra*, 140 Cal.App.3d 979, however, the court rejected the suggestion that private arbitrators should be immune from suit for the failure to render a decision. While observing that judges could not be sued for such failure, the court noted that "[t]o date, no case has extended arbitral immunity to cover such a situation." (*Id*., at p. 983.) The court concluded that civil liability may be imposed upon a private arbitrator to "uphold the contractual obligations of [the] arbitrator to the parties involved" to render a decision. (*Id*., at p. 985; see *Moore* v. *Conliffe* (1996) 7 Cal.4th 634, 655; *American Arbitration Assn.* v. *Superior Court, supra*, 8 Cal.App.4th at 1133; *Coopers & Lybrand* v. *Superior Court, supra*, 212 Cal.App.3d at 524.) As with judicial arbitration awards, in case of abuse or error, private arbitration awards may be corrected (§§ 1286.6-1286.8) or vacated (§§ 1286.2-1286.4) upon application of a party. (See *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 12-13.)

We thus conclude in answer to the first question that the common law immunity from civil liability for judicial officers applies to judicial arbitrators; it also applies to private arbitrators when the latter are acting in their quasi-judicial capacities.

2.     Statutory Immunity

The second question to be resolved concerns the statutory immunity from civil liability for arbitrators that was enacted and recently repealed by the Legislature. Did such enactment or repeal affect a judicial or private arbitrator's common law immunity from civil liability? We conclude that the statute's enactment expanded the immunity for private arbitrators and that its repeal eliminated such expansion of the immunity.

In 1985 (Stats. 1985, ch. 709, § 1) the Legislature enacted section 1280.1 to provide as follows:

"An arbitrator has the immunity of a judicial officer from civil liability when acting in the capacity of arbitrator under any statute or contract.

"This section shall remain in effect only until January 1, 1991, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1991, deletes or extends that date."

In 1990 (Stats. 1990, ch. 817, § 2) the Legislature extended the date of repeal from 1991 to 1996, and added a second paragraph as follows: "The immunity afforded by this section shall supplement, and not supplant, any otherwise applicable common law or statutory immunity."[4] In 1995 (Stats. 1995, ch. 209, § 2) the Legislature extended the date of repeal to January 1, 1997. Accordingly, as of January 1, 1997, the statutory immunity from liability for arbitrators is repealed.

---

[4] Particular statutes providing arbitrators with immunity are found in Code of Civil Procedure section 1297.119 (international commercial dispute arbitrations) and Business and Professions Code section 6200, subdivision (f) (attorney fees arbitrations). Both statutes provide for the same immunity which attaches in judicial proceedings. Neither is affected by the repeal of section 1280.1.

Section 1280.1 is contained in the statutory scheme governing private arbitrations, and therefore has no bearing on judicial arbitrations. (*Porreco* v. *Red Top RV Center*, *supra*, 216 Cal.App.3d at 118-119.) By the same enactment which added section 1280.1 in 1985, however, section 1141.30 (applicable to judicial arbitrations) was amended to read in part as follows:

> "The provisions of [sections 1141.10-1141.31] shall not be construed in derogation of the provisions of [sections 1280-1294.2], and, to that extent, the provisions of [sections 1141.10-1141.31] and [sections 1280-1294.2], other than the provisions of Section 1280.1, are mutually exclusive and independent of each other." (Stats. 1985, ch. 709, § 2.)

Section 1141.30 currently contains the above quoted language respecting "other than the provisions of Section 1280.1."

From 1986 to 1997, while section 1280.1 was the law of California, private arbitrators had the same immunity from civil liability as a "judicial officer"--which was the same immunity extended under the common law to judicial arbitrators. Hence both judicial and private arbitrators had the same degree of immunity and to that extent, the two statutory schemes were not "mutually exclusive and independent of each other."

Section 1280.1 was enacted in response to the court's decision in *Baar* v. *Tigerman*, *supra*, 140 Cal.App.3d 979, discussed above, which held that a private arbitrator may be sued by a party to the arbitration for the failure to render a decision. (*Moore* v. *Conliffe*, *supra*, 7 Cal.4th at 654-655; *Thiele* v. *RML Realty Partners*, *supra*, 14 Cal.App.4th at 1526; *American Arbitration Assn.* v. *Superior Court*, *supra*, 8 Cal.App.4th at 1133; *Coopers & Lybrand* v. *Superior Court*, *supra*, 212 Cal.App.3d 534-536.) Under the terms of section 1280.1, such suits could no longer be maintained under the common law rule. (See Civ. Code, § 22.2; 74 Ops.Cal.Atty.Gen. 86, 88 (1991); 67 Ops.Cal.Atty.Gen. 369, 379-381 (1984).)

Upon the repeal of section 1280.1 on January 1, 1997, the common law immunity for private arbitrators is again in effect, allowing arbitration parties to sue such arbitrators for the failure to render a decision. The enactment of section 1280.1 for 11 years may thus be seen as an experiment by the Legislature to determine whether private arbitrators require shielding from liability for the failure to perform their contractual duties in rendering a decision. (*Howard* v. *Drapkin*, *supra*, 222 Cal.App.3d at 853, fn. 4; *Coopers & Lybrand* v. *Superior Court*, *supra*, 22 Cal.App.3d at 536-537.) Ultimately the Legislature appears to have concluded that such shielding is unnecessary.

In answer to the second question, we thus conclude that the enactment of statutory immunity from civil liability for arbitrators did not affect the immunity applicable to judicial arbitrators, but did expand the scope of immunity for private arbitrators to that applicable to judicial officers. Section 1280.1's repeal reinstates the common law immunity for quasi-judicial acts, with private arbitrators remaining liable for their contractual obligations owed to the parties.

\* \* \* \* \*