[No. G014564. Fourth Dist., Div. Three. Aug. 31, 1995.]

RICHARD PARKER, Plaintiff and Respondent, v.
JOHN BABCOCK et al., Defendants and Appellants.

COUNSEL

Murchison & Cumming, Richard D. Newman, Hill, Genson, Even, Crandall & Wade, Anne Cleeland and Michael J. McGuire for Defendants and Appellants.

Kenneth W. Thompson for Plaintiff and Respondent.

OPINION

CROSBY, J.—The superior court confirmed an arbitration award and entered judgment for plaintiff Richard Parker, including costs based on his Code of Civil Procedure section 998 offer. This was a true arbitration, however; and Code of Civil Procedure section 998 has no application. Moreover, pursuant to the parties' agreement, defendants are entitled to a release and dismissal. Accordingly, we reverse.

I

This negligence action was ordered to judicial arbitration, and Parker was awarded approximately $50,000 against defendant John Babcock. Defendant Angel's Gate Cultural Center prevailed on both the complaint and Babcock's cross-complaint. Parker was dissatisfied with the award and timely requested a trial de novo. The same day he served the two defendants with a single

statutory offer to compromise the litigation, "jointly and severally, in the amount of $75,000, each party to bear his own costs." The statutory offer lapsed. (Code Civ. Proc., § 998, subd. (b)(2).)

One year later, on the scheduled trial date, the parties stipulated to binding arbitration.[1] The litigants agreed to share equally in "[t]he cost of the arbitration" and plaintiff could not be awarded more than $100,000 in damages against either defendant or more than $130,000 in the aggregate. Paragraph 5 of the stipulation read, "In the event that any award made at this arbitration is not fully complied with within thirty (30) days of the date of service of such award, any prevailing party hereto may move this court to enter judgment in accordance with the arbitration award and pursuant to California Rules of Court, [r]ule 1615." The stipulation added, "Notwithstanding the provisions of paragraph 5, upon full compliance with the award of [the] arbitrator, the plaintiff shall execute a full and final release of liability as against each defendant [and dismiss the action with prejudice]."

The arbitration some six months later netted plaintiff a $120,000 award, with "equal liability [] as to each [d]efendant." The arbitrator did not award costs, presumably in accordance with the parties' stipulation to share them equally. Notice of the arbitration award was served on counsel on March 16, 1993.

Each defendant promptly tendered a check for $60,000. Plaintiff's attorney acknowledged his receipt of the checks; but on March 22, 1993, he filed and served a memorandum of costs, claiming more than $20,000 in prejudgment interest alone, incurred from the date of his statutory offer to compromise. Defendants, reasonably relying on the unambiguous language in the agreement, refused to pay costs. Exchanges notable only for their escalating rancor ensued. Plaintiff's attorney finally advised the binding arbitration was "merely a method of arriving at the amount of judgment, which we agreed to substitute for trial, [and] the closing document should be a satisfaction of judgment rather than a release. Even so, should you desire a release instead of a satisfaction, I have no objection to executing it, but it must be in the full amount, including costs and prejudgment interest." Six days later—and less than one month after the arbitration award was rendered—Parker petitioned the superior court to confirm the arbitration award.[2] Defendants opposed the petition on the basis the stipulation called for a release and dismissal with

---

[1]Only the attorneys signed the stipulation. But they represented they had the clients' full authority to agree to binding arbitration. (See *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109].)

[2]Plaintiff's counsel attempted to justify his jumping the gun, i.e., filing the petition within 30 days of service of the arbitration award, by insisting opposing counsel's refusal to pay plaintiff's costs constituted, in his view, a refusal to "fully comply" with the arbitration

prejudice and moved to tax costs, noting no judgment could be entered per the stipulation and, in any event, the single statutory offer to two defendants was fatally defective.

At the hearing on the petition and motion, court and counsel focused on the nature of the arbitration, i.e., whether it was "judicial," potentially entitling plaintiff to costs per *Joyce* v. *Black* (1990) 217 Cal.App.3d 318 [266 Cal.Rptr. 8], or "true," in which case no costs could be awarded (*Woodard* v. *Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656 [217 Cal.Rptr. 514]). Relying on *Porreco* v. *Red Top RV Center* (1989) 216 Cal.App.3d 113 [264 Cal.Rptr. 609], the judge finally announced the arbitration in this case was "a hybrid form of judicial arbitration." He entered judgment in Parker's favor and awarded $21,679.16 in costs, including prejudgment interest based on the Code of Civil Procedure section 998 offer.

## II

■ Appellate courts have long recognized a distinction between true arbitration and judicial arbitration. (*Blanton* v. *Womancare, Inc., supra,* 38 Cal.3d 396; *Dodd* v. *Ford* (1984) 153 Cal.App.3d 426 [200 Cal.Rptr. 256].) Judicial arbitration is basically a creature of statute (Judicial Arbitration Act, Code Civ. Proc., § 1141.10 et seq.), but ". . . the system it describes is neither judicial nor arbitration. The hearing is not conducted by a [sitting] judge, and the right to a trial de novo removes the finality of true arbitration. 'Extrajudicial mediation' would be [a more apt term]." (*Dodd, supra,* at p. 432, fn. 7.)

True arbitration, on the other hand, "has a life of its own outside the judicial system." (*Byerly* v. *Sale* (1988) 204 Cal.App.3d 1312, 1316 [251 Cal.Rptr. 749].) A stipulation by litigants to submit a dispute to binding arbitration "*is* outside the judicial arbitration scheme and at the expense of the parties; but once the parties waive[] the right to seek a trial de novo by agreeing to binding arbitration, these proceedings [become] a true arbitration —under the auspices of the superior court . . . ." (*Dodd* v. *Ford, supra,* 153 Cal.App.3d at p. 432.) An arbitration compelled as "the result of a contractual agreement between the parties" is also a true arbitration. (*Byerly, supra,* at p. 1316.)[3]

■ While "[o]pportunity for de novo trial is what principally distinguishes court-annexed arbitration pursuant to the Judicial Arbitration Act

---

award, excused his agreement to sign a release and dismiss the action, and entitled him to a judgment confirming the award.

[3]This variety of true arbitration is also known as contractual arbitration. (*Byerly* v. *Sale, supra,* 204 Cal.App.3d 1312.)

from private arbitration conducted pursuant to the agreement of the parties and subject to the arbitration statute (§ 1280 et seq.)" (*Blanton* v. *Womancare, Inc.*, *supra*, 38 Cal.3d at pp. 401-402), "[t]here are other important differences as well." (*Id.* at p. 402, fn. 5.) "Private arbitration occurs only pursuant to agreement, and it is the agreement which determines the details of the process. (§ 1282 et seq.) . . . Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts. [¶] Judicial arbitration, by contrast, is an adjunct to litigation." (*Ibid.* )

In true arbitration, where there is a stipulation to—or contractual agreement for—binding arbitration, "the pleadings in the civil action, having fulfilled their purpose [become] virtually *functus officio.*" (*Dodd* v. *Ford*, *supra*, 153 Cal.App.3d at pp. 431-432.) Also, the statutes providing for prejudgment costs and interest (Code Civ. Proc., § 998; Civ. Code, § 3291) do not apply in true arbitration cases. (*Woodard* v. *Southern Cal. Permanente Medical Group, supra*, 171 Cal.App.3d 656, 667-668.)

A different rule pertains in judicial arbitration: "Unlike [true] arbitration, judicial arbitration takes place within the judicial arena and is *necessarily* followed by court action, consisting of either a trial de novo (Code Civ. Proc., § 1141.20) or entry of judgment on the award (Code Civ. Proc., § 1141.23). Thus [Code of Civil Procedure section 998 and Civil Code section 3291] are . . . logically applicable to judicial arbitration procedures." (*Joyce* v. *Black, supra*, 217 Cal.App.3d at p. 322, italics added.)

*Porreco* v. *Red Top RV Center, supra*, 216 Cal.App.3d 113 stands as somewhat a faint—not to mention feint—beacon on the arbitration shoals. Shortly before expiration of the five-year period to bring the case to trial, the parties agreed to binding arbitration in a document entitled, "Stipulation for Judicial Arbitration." Although the stipulation was signed before the fifth anniversary of the suit, no order accepting it was filed before that critical date. Accordingly, the defendants moved to dismiss for failure to bring the case to trial within the statutory period. Before the motion could be heard, the superior court signed and filed an order accepting the stipulation. The motion to dismiss was then granted, and no arbitration was held.

On appeal the plaintiffs raised a theory not advanced in the trial court. They contended the stipulation for binding arbitration created a true arbitration not controlled by the Judicial Arbitration Act. The appellate panel acknowledged the new issue as one of law, properly raised for the first time on appeal, but rejected it, finding the parties intended to participate in a judicial arbitration with an "advance waiver of the right to request a de novo trial." (216 Cal.App.3d at p. 120.)

Nevertheless, having reached that conclusion, the Court of Appeal held, ". . . a stipulation to submit a matter to judicial arbitration [even binding arbitration] must be considered effective when it is signed by the parties." (216 Cal.App.3d at p. 123, fn. omitted.) Because the matter was submitted to arbitration before the fifth anniversary of the action, the tolling provisions of Code of Civil Procedure section 1141.17 were triggered, precluding dismissal.

Alternatively, the Court of Appeal applied the reasoning of this court's *Dodd* v. *Ford, supra,* 153 Cal.App.3d 426, a true—as opposed to judicial—arbitration case, and held the superior court's dismissal of the action had no practical effect on the parties' agreement to submit to judicial arbitration: "[A] written stipulation to submit to binding arbitration, even one intended to be governed by the Judicial Arbitration Act, is independently enforceable. . . . Even if the complaint in this case had been properly dismissed, then, the parties would be bound to arbitrate this controversy and the superior court would retain the role of hearing motions to compel arbitration and enforce any award." (*Porreco* v. *Red Top RV Center, supra,* 216 Cal.App.3d at pp. 130-131.)

■ But nothing in *Porreco*'s analysis or conclusion supports the superior court's decision in this case to transform what the parties clearly intended to be, and what was, a true arbitration. It appears the judge was persuaded this was a type of judicial arbitration based on paragraph 5, reproduced above. The problem is, the prevailing party's remedy for a recalcitrant adversary, as described in paragraph 5, was a motion "to enter judgment in accordance with the arbitration award and *pursuant to California Rules of Court,* [r]ule 1615." (Italics added.) California Rules of Court, rule 1615 applies exclusively to judicial arbitrations. But it does not authorize a motion to the court. Rule 1615 explains simply that the arbitrator is responsible for filing the award and, if no request for a trial de novo is made within 30 days, the court clerk performs the ministerial function of entering a judgment on the award. (See also Code Civ. Proc., § 1141.23.) The motion procedure described in paragraph 5 of the stipulation is outlined in Code of Civil Procedure section 1285 et seq. and, consistent with the parties' intent, is applicable to true arbitrations.

The description rather than the label controls here. The parties clearly desired to avoid any postarbitration intervention or participation by the court: they agreed to binding arbitration, with costs borne equally by the parties. The arbitrator was to serve his award on the parties, rather than file it with the court. There was no provision for the ministerial entry of a judgment on the arbitration award. In short, this was intended to be—and was—a true arbitration.

Defendants performed in accordance with the agreement, tendering the sums due under the arbitration award within 30 days. Parker was then obliged to execute a release and request for dismissal with prejudice. His unilateral decision to renege on the agreement and seek costs and a judgment did not transform the proceedings into a judicial arbitration and did not give the superior court the authority to enter a judgment in plaintiff's favor.[4]

The judgment is reversed, and the matter is remanded to the superior court with directions to vacate the judgment and to order plaintiff to sign a release and request for dismissal with prejudice in exchange for defendants' payment of the arbitration award. Defendants shall have costs on appeal.

Sills, P. J., and Wallin, J., concurred.

---

[4]Because Code of Civil Procedure section 998 does not apply, it is unnecessary to reach the joint offer issue.