[No. G016245. Fourth Dist., Div. Three. Nov. 26, 1997.]

JULIA A. CARO, Plaintiff and Respondent, v.
JOAN IRVINE SMITH, Defendant and Appellant.

[No. G016461. Fourth Dist., Div. Three. Nov. 26, 1997.]

JULIA A. CARO, Plaintiff and Appellant, v.
JOAN IRVINE SMITH, Defendant and Appellant.

## COUNSEL

James R. Traut for Plaintiff and Respondent and for Plaintiff and Appellant.

Baraban & Teske, Jeffrey H. Baraban and James S. Link for Defendant and Appellant.

## OPINION

**CROSBY, J.**—Oral contracts, Samuel Goldwyn is widely quoted as saying, are not worth the paper they are written on. Defendant's lawyers would give the same short shrift to a stipulation signed by one of them to submit a personal injury claim to binding arbitration. They call the stipulation worthless because their client did not personally sign it. They say plaintiff's counsel acted at his peril in taking them at their word concerning their authority to stipulate on their client's behalf.

Defendant did not sign the stipulation. But she participated in the arbitration, expressly acknowledging to the arbitrator her understanding that it would be binding; she has never personally sought to repudiate her consent. Equally important, the "true" client (defendant's insurance carrier) agreed to binding arbitration after acknowledging its duty to defend and indemnify its insured. These factors clearly distinguish this case from *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109], the primary authority relied on by the lawyers to disavow the agreement.

Only after we pressed the issue of sanctions on appeal did the defense lawyers acknowledge they were upset with the arbitration award because it included an award of attorney fees. They saw *Blanton* as a fortuitous loophole to avoid the arbitration's binding effect.

Such tactics are unworthy of the humblest trade or occupation, and they *should* be unthinkable for a calling claiming to be a profession. The case law, including *Blanton,* plainly recognizes that clients may subsequently ratify arbitration agreements to which they did not initially subscribe. There is no question there was ratification by both defendant, the nominal client, and her carrier (which actually controlled the litigation).

We affirm the judgment on the arbitration award, including the attorney fees award, and impose sanctions for a frivolous appeal. We also affirm the postjudgment order awarding prejudgment interest based on defendant's refusal to accept a pretrial statutory offer.

## I

Plaintiff Julia A. Caro was employed by defendant Joan Irvine Smith to perform secretarial, interior design, and other duties. She occasionally exercised and showed Smith's horses. On one occasion at work, she was asked to hold Smith's horse "Panache" during an acupuncture session. She was too inexperienced for the task, and the animal bolted and seriously injured her.

Smith had no workers' compensation insurance coverage for Caro. Consequently Caro sued in tort, and Smith's defense was provided by her liability carrier, Golden Eagle Insurance Company. It retained Jeffrey H. Baraban to represent her. Meanwhile, Smith's personal attorney assured James R. Traut, Caro's lawyer, that Golden Eagle assumed the defense with no reservation of rights and the potential liability fell within the policy limits.

Shortly after the mandatory settlement conference, Baraban informed Traut that Golden Eagle would stipulate to binding arbitration. Traut confirmed this by letter. The attorneys exchanged numerous letters and telephone calls concerning the selection of an arbitrator. In February 1994, Baraban stated Golden Eagle had agreed on attorney Clive Kemp as the arbitrator, and a date was set.

Baraban, purporting to act on Smith's behalf, signed a written "Stipulation Re Binding Arbitration." It stated, "The parties hereto, individually, and through their undersigned respective counsel of record, stipulate . . . ." Baraban told Traut he was "authorized and instructed" to stipulate to binding arbitration. The stipulation stated the arbitration would be binding and "each party through their respective counsel waive and forever relinquish the right to a trial de novo as provided in California Rule of Court 1616."

All parties and attorneys were present. The arbitrator began the proceedings by asking Caro and Smith "whether they understood that it was a Binding Arbitration . . . ." He explained " 'binding' meant that there would be no appeal of his award." Both Caro and Smith audibly responded, "Yes."

In his written opinion, the arbitrator found Caro was acting within the course and scope of her employment when she was injured and her employer did not rebut the presumption she was negligent. (Lab. Code, § 3708.) He awarded $331,111 in compensatory damages.

Caro also sought *statutorily mandated* attorney fees pursuant to Labor Code section 3709, based on Smith's failure to provide workers' compensation insurance for her.[1] Baraban objected because "[t]here was no agreement by the parties that attorney fees would be considered in the Arbitration." Following supplemental briefing, the arbitrator awarded plaintiff an additional $59,500 in statutory attorney fees. The arbitrator concluded, "it appears clear to the undersigned that both plaintiff and defendant did, by signing the Stipulation, intend to litigate all issues which would include attorney fees." Caro dismissed her lawsuit against Smith and filed a petition to confirm the award pursuant to Code of Civil Procedure section 1285.

Baraban was displeased with the award of attorney fees, allegedly believing it fell outside the agreement to arbitrate.[2] He asked James S. Link, who was of counsel to his law firm and who handled its appellate work, "if there was any way to attack the stipulation . . . ." Link, after examining *Blanton v. Womancare, Inc., supra,* 38 Cal.3d 396, developed the stratagem of challenging the stipulation on the ground that Smith had not signed it. Link concluded a subsequent appellate opinion, *Sanker v. Brown* (1985) 167 Cal.App.3d 1144 [213 Cal.Rptr. 768], authorized "the possibility of manipulation—of withholding an objection unless and until an unfavorable decision is announced" by placing the burden on the opposing party (namely Traut) " 'to ascertain at his or her peril whether the other parties have, in fact, agreed to waive their right to a trial de novo.' "

Link prepared the opposing papers to the motion to confirm, and Baraban signed them. Baraban asserted he was not authorized to stipulate to arbitration and argued Smith's signature was essential. Although Baraban and Link filed opposition papers on three separate occasions (May 4, June 3 and June 24), they never filed a declaration from Smith purporting to repudiate her oral agreement to arbitrate, or reflecting she was unavailable.

The superior court found Smith had actual knowledge that the arbitration was binding and entered a judgment confirming the arbitration award in the amount of $390,611. (Code Civ. Proc., § 1287.4.) Baraban signed and filed a notice of appeal on Smith's behalf.

Following the entry of judgment on the order confirming the arbitration award, the court awarded Caro prejudgment interest of $73,431 based on her recovery of a more favorable "judgment" than her pretrial statutory offer of

---

[1] We have not been provided with a copy of Caro's complaint. Presumably, attorney fees were sought there.

[2] Baraban could not have been thrilled with the damage award either, since it was more than double Caro's prearbitration demand.

$151,213. (Code Civ. Proc., § 998; Civ. Code, § 3291.) The court denied Caro's other costs of $2,234.20 for such expenses as filing fees, deposition transcripts, and process charges. In a separate appeal, both parties challenge the trial court's postarbitration order on these statutory costs.

## II

■ Nothing in the Supreme Court's opinion in *Blanton v. Womancare, Inc., supra,* 38 Cal.3d 396 allows attorneys to renege on agreements for binding arbitration because they are displeased by an award. In *Blanton* a client told her attorney she would consent to arbitration only so long as her right to go to trial was preserved. Ignoring these directions, her attorney stipulated to binding arbitration. Three months later the client learned for the first time the facts concerning the stipulation. She *immediately* objected, fired the attorney, and through new counsel sought to invalidate the stipulation.

The Supreme Court agreed with the client, holding her lawyer lacked implied authority to relinquish her fundamental right to a trial and needed her express consent. The court based its ruling on principles of agency law, holding the attorney had "no apparent authority to bind his client to an agreement for arbitration." (38 Cal.3d at p. 407.)

But *Blanton* emphasized the equally important agency principle of ratification through which "unauthorized acts of an attorney may be binding upon [a] client . . . ." (38 Cal.3d at p. 408.) The court noted that ratification did not apply because the client arbitrated her case only after her new attorney was unable to persuade the trial court to set aside the order negotiated by her previous attorney. (*Ibid.*)

It would be manifestly inequitable to allow a client "both to have his cake and eat it too; that is, allow him both to accept the benefits and also repudiate the transaction." (*Alvarado Community Hospital v. Superior Court* (1985) 173 Cal.App.3d 476, 481 [219 Cal.Rptr. 52].) This is the functional equivalent of the "heads I win, tails you lose" proposition that has troubled this court in one-sided de novo attacks on arbitration awards. (*Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1079-1080 [56 Cal.Rptr.2d 922].) As we stated in *Saika,* "[t]he promise of an inexpensive, speedy resolution to the claim evaporated with one party's unilateral ability to avoid results it did not like." (49 Cal.App.4th at p. 1081.)

To avoid precisely this type of "procedural gamesmanship," the Supreme Court in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 30 [10 Cal.Rptr.2d

183, 832 P.2d 899] required a party to raise a challenge to the legality of a contractual provision before the completion of the arbitration process; the court refused to "permit a party to sit on his rights, content in the knowledge that should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrator's award." *Moncharsh* decried this tactic as a "waste of arbitral and judicial time and resources . . . ." (*Ibid.*)

Other decisions have reached similar conclusions. In *Navrides* v. *Zurich Ins. Co.* (1971) 5 Cal.3d 698 [97 Cal.Rptr. 309, 488 P.2d 637, 49 A.L.R.3d 828], the court held a client ratified the unauthorized compromise of her claim. *Navrides* refused to allow a client to accept the benefits of an attorney's unauthorized actions without taking the burdens as well. (*Id.* at p. 704.) And in *City of Fresno* v. *Baboian* (1975) 52 Cal.App.3d 753 [125 Cal.Rptr. 332], the court found landowners ratified their attorney's stipulation by allowing the city to actually take possession, failing to revoke the attorney's authority, and not offering to return the funds paid to him. (*Id.* at pp. 759-760.)

A

There is no question that all participants in this case, attorneys and litigants alike, intended the arbitration to be a binding mechanism to resolve the dispute. (*Cheng-Canindin* v. *Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 687-688 [57 Cal.Rptr.2d 867].) The words "binding" and "arbitration" almost always appeared together in every court document and correspondence between the parties.

We know Smith's carrier, Golden Eagle, had accepted responsibility and essentially put itself in her shoes. And while it is somewhat artificial to focus on Smith's behavior, given the carrier's agreement to defend and indemnify without a reservation of rights, we know, too, that Smith personally agreed the arbitration was to be binding at the beginning of the hearing, when the arbitrator wisely inquired of the parties. The undisputed evidence shows Smith expressly assented and has never claimed her consent was fraudulently induced or sought to repudiate it for any reason. The circumstances were more than sufficient to establish ratification.

*Sanker* v. *Brown, supra,* 167 Cal.App.3d 1144 is not on point. A client moved to set aside a contractual arbitration award on the ground he never understood it to be a binding arbitration and was told it would be advisory only; he declared his attorney stipulated to waive his right to trial de novo without his knowledge or consent. As in *Blanton,* the client promptly repudiated the stipulation upon learning the nature of it. The *Sanker* court

reversed the trial court's order denying the client's motion to vacate the arbitration award accordingly and remanded for trial on the merits.

Here, only the attorneys seek to renege. Link admits *he* decided to raise the issue of the purported lack of client consent because of Baraban's displeasure with the attorney fees award. Smith's silence says it all, though.[3] Nothing in *Levy* v. *Superior Court* (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171] bars attorney-signed stipulations from affecting a client's essential rights so long as the attorney is, as here, so authorized. (See also *Williams* v. *Saunders* (1997) 55 Cal.App.4th 1158, 1163-1164 [64 Cal.Rptr.2d 571]: "We express no opinion whether [plaintiff] can [enforce the settlement] in a different motion or separate proceeding.")

## B

Smith's attorneys challenge the admissibility of the evidence of her consent to binding arbitration as hearsay and as being barred by Evidence Code section 703.5. To put it as mildly as we can force ourselves to write, they are wrong again.

The arbitrator's colloquy with Smith was offered to show notice to her (akin to a warning or admonition), not for the truth of the matter asserted. An out-of-court statement is properly admitted for a relevant nonhearsay purpose, such as to show a warning, admonition, or notice, "since the hearsay rule does not forbid the introduction of evidence that a request has been made when the making of the request is significant irrespective of the truth or falsity of its content." (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 125 [52 Cal.Rptr. 561, 416 P.2d 793]; see also *City etc. of San Francisco* v. *City Investment Corp.* (1971) 15 Cal.App.3d 1031, 1038 [93 Cal.Rptr. 690] [trial court properly admitted city's letter to property owner to demonstrate notice concerning building conditions]; *People* v. *Scalzi* (1981) 126 Cal.App.3d 901, 907 [179 Cal.Rptr. 61] [" '[E]vidence of a declarant's statement that is offered to prove that the statement imparted certain information to the hearer . . . is not hearsay, since it is the hearer's reaction to the statement that is the relevant fact sought to be proved, not the truth of the matter asserted in the statement.' "].) The declarations that Smith responded, "Yes," are also admissible as an admission of a party opponent. (Evid. Code, § 1220.)

---

[3]Client "no knowledge" declarations were filed in both *Blanton* v. *Womancare, Inc., supra,* 38 Cal.3d 396 and *Sanker* v. *Brown, supra,* 167 Cal.App.3d 1144. Analogously, they routinely are required for litigants who seek a new trial on the basis of juror misconduct to show they did not "secretly preserve" the issue in case of an unfavorable verdict. (*Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 103 [95 Cal.Rptr. 516, 485 P.2d 1132]; see also *People* v. *Southern Cal. Edison Co.* (1976) 56 Cal.App.3d 593, 600 [128 Cal.Rptr. 697] [reversing new trial order because of absence of "no knowledge" declaration by client].)

The proscriptions of Evidence Code section 703.5 do not apply. That section bars arbitrators from testifying (whether personally or by declaration) at subsequent civil proceedings, except in limited instances.[4] Caro did not offer the arbitrator's declaration; she submitted her own and that of Traut. In *Skulnick* v. *Roberts Express, Inc.* (1992) 2 Cal.App.4th 884 [3 Cal.Rptr.2d 597], the Court of Appeal approved the use of attorney declarations to describe conversations during multiple settlement conferences to clarify the meaning of a settlement agreement and to establish the parties' reasonable beliefs as to what the settlement encompassed; the court relied on section 703.5 *only* to exclude a similar declaration from the settlement judge. (2 Cal.App.4th at p. 890, fn. 12.)

Here, the attorneys transparently substitute the limited bar in Evidence Code section 703.5 for the much broader restrictions of Evidence Code sections 1152 (barring evidence of offers to compromise) and 1152.5 (barring evidence of communications made during mediation proceedings). In contrast to sections 1152 and 1152.5 (which do not apply here), section 703.5 contains no ban on "conduct or statements"; the statute limits *who* may testify, not what testimony may be received.

### III

■ Naturally, despite their agreement to *binding* arbitration, Smith's attorneys argue on appeal that the arbitrator exceeded his authority under the stipulation by including attorney fees in the award. The stipulation specified, "[a]ll issues of liability, as well as damages" would be "fully litigated by the respective attorneys of record." The arbitrator quite reasonably concluded that the stipulation included Caro's entitlement to statutory fees under Labor Code section 3709.

The attorneys' attack on the arbitrator's authority to interpret the stipulation may be mildly described as meritless. By stipulating to *binding* arbitration, the parties agreed to determine their dispute " 'without necessity for any contact with the courts.' " (*Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at p. 9, quoting *Blanton* v. *Womancare, Inc., supra,* 38 Cal.3d at p. 402, fn.

---

[4]Evidence Code section 703.5 provides, "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement or conduct that could (a) give rise to civil or criminal contempt, (b) constitute a crime, (c) be the subject of investigation by the State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings under paragraph (1) or (6) of subdivision (a) of Section 170.1 of the Code of Civil Procedure. However, this section does not apply to a mediator with regard to any mediation under Chapter 11 (commencing with Section 3160) of Part 2 of Division 8 of the Family Code."

5.) This means that the arbitrator, not the court, should resolve " 'any doubts as to the meaning or extent of an arbitration agreement . . . .' " (*Advanced Micro Devices, Inc.* v. *Intel Corp.* (1994) 9 Cal.4th 362, 372 [36 Cal.Rptr.2d 581, 885 P.2d 994].)

Arbitrators do not exceed the scope of their authority because they erroneously decide a contested issue of fact or law; the parties' expectation of finality from a binding arbitration requires that "judicial intervention in the arbitration process be minimized." (*Moncharsh* v. *Heily & Blase, supra*, 3 Cal.4th at p. 10.) To avoid the extra delay, uncertainty, and costs of judicial review, we refrain from substituting our judgment for the arbitrator's; in close cases, the award must stand. (*Advanced Micro Devices, Inc.*, *supra*, 9 Cal.4th at pp. 372-373; see *David* v. *Abergel* (1996) 46 Cal.App.4th 1281 [54 Cal.Rptr.2d 443] [affirming arbitration award including Code of Civil Procedure section 128.5 sanctions under written agreement permitting arbitrator to grant "any remedy or relief" to which a party is entitled under California law].)

This case is not close. Nothing in the stipulation between Caro and Smith specifically restricted the arbitrator from awarding *statutory* attorney fees as damages. It was the Legislature, not the arbitrator, that adopted a "positive statutory provision" *mandating* attorney fees for employees not covered by workers' compensation insurance. (*Cortez* v. *Bootsma* (1994) 27 Cal.App.4th 935, 938, fn. 3 [33 Cal.Rptr.2d 20].) A reasonable interpretation of the scope of an agreement to arbitrate an employee's tort claim against an employer would include statutory attorney fees contemplated by the Labor Code. Under *Advanced Micro Devices* and *Moncharsh,* that is the end of the matter.

IV

The trial court awarded prejudgment interest for Caro's rejected statutory offer (Code Civ. Proc., § 998; Civ. Code, § 3291) in the mistaken belief it was dealing with judicial arbitration. (*Joyce* v. *Black* (1990) 217 Cal.App.3d 318, 322 [266 Cal.Rptr. 8] [reversing order striking prejudgment interest in judicial arbitration].) But this was true, not judicial, arbitration. (See *Parker* v. *Babcock* (1995) 37 Cal.App.4th 1682 [44 Cal.Rptr.2d 602]; *Dodd* v. *Ford* (1984) 153 Cal.App.3d 426, 432 [200 Cal.Rptr. 256].)[5]

We review the court's ruling, not its reasoning, affirming the order if correct on any theory. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325

---

[5]The court's error most likely was caused by the parties' hybrid stipulation to arbitrate, which, while setting up a binding arbitration without a right to trial de novo (making it a true arbitration), extensively referred to the statutes and rules regarding *judicial* arbitration. The stipulation provided, "This matter shall be tried to a final conclusion at an arbitration proceeding pursuant to California Rules of Court 1601 through 1607 and C.C.P. Section 1141.10. [¶] The arbitration of this matter is to be binding and each party through their

[48 P. 117].) Even though this was true arbitration, we hold Caro is entitled to both prejudgment interest and the other statutory costs. Caro misreads our decision in *Parker* v. *Babcock, supra,* 37 Cal.App.4th 1682 to hold that prejudgment interest never can be awarded in true arbitration. As we will explain, *Parker* is distinguishable.

The arbitrator determined that Caro was entitled to statutory costs, declaring that "[s]tatutorily recoverable fees and costs are also awarded according to proof." He clearly had authority to do so. (*Britz, Inc.* v. *Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085 [40 Cal.Rptr.2d 700] [arbitrator in a contractual arbitration proceeding had jurisdiction to award attorney fees and costs to fully compensate the prevailing party notwithstanding silence of agreement on costs].) Consistent with true arbitration, Caro voluntarily dismissed her action following the arbitration hearing and sought entry of judgment pursuant to Code of Civil Procedure section 1287.4, which requires a trial court to enter a judgment where an arbitration award has been judicially confirmed. The court confirmed the arbitration award and directed that judgment be entered for Caro "along with costs, according to proof." Caro submitted a cost bill, including a request for prejudgment interest based on the defense failure to accept her statutory offer.

Prejudgment interest was properly imposed in this true arbitration based on Caro's recovery of a more favorable "judgment" than her statutory offer. (Civ. Code, § 3291.) While the arbitrator's award was not a "judgment" within the meaning of Civil Code section 3291, the trial court's judgment pursuant to Code of Civil Procedure section 1287.4 clearly was. The statute provides, "If an award is confirmed, judgment shall be entered in conformity therewith. The judgment so entered has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action . . . ." This applies to statutory costs as well. (*Cobler* v. *Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 533 [265 Cal.Rptr. 868] ["Under section 1287.4, judgment is entered when an award is confirmed; the costs provisions of section 1032 et seq. thus become applicable."].)

Our decision harmonizes with *Parker* v. *Babcock, supra,* 37 Cal.App.4th 1682 and *Woodard* v. *Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656 [217 Cal.Rptr. 514]. We do not intend to obliterate the distinction between true (or contractual) arbitration and judicial arbitration. But while this was a true arbitration, the critical question is: To what did the parties agree? As we stated in *Parker* v. *Babcock, supra,* 37 Cal.App.4th at

respective counsel waive and forever relinquish the right to a trial de novo as provided in California Rule of Court 1616."

page 1687, " 'Private arbitration occurs only pursuant to agreement, and it is the agreement which determines the details of the process.' "

In *Parker* the parties expressly agreed to adopt an alternative procedure to Code of Civil Procedure section 1287.4, which provides for the ministerial entry of a *judgment* following an order confirming the arbitration award. Their stipulation provided, " '[U]pon full compliance with the award of [the] arbitrator, the plaintiff shall execute a full and final release of liability as against each defendant [and dismiss the action with prejudice].' " (37 Cal.App.4th at p. 1685.) We concluded from this provision that the parties "clearly desired to avoid any postarbitration intervention or participation by the court . . . . There was no provision for the ministerial entry of a judgment on the arbitration award." (*Id.* at p. 1688.) The *Parker* stipulation obligated the plaintiff to execute a release and dismissal with prejudice once the defendant tendered the sums due under the arbitration award within 30 days. There was to be no section 1287.4 judgment.

The same cannot be said here. Rather than attempting to comply with the arbitrator's award, Smith stoutly resisted it, with her attorneys challenging their own authority to have stipulated to binding arbitration. In contrast to *Parker*, the instant stipulation never provided any alternatives to the trial court's ministerial obligation under Code of Civil Procedure section 1287.4 to enter a judgment on confirmation of the award. And unlike *Woodard* v. *Southern Cal. Permanente Medical Group, supra,* 171 Cal.App.3d 656, where the arbitrators, by a 2-to-1 vote, denied prejudgment interest under Civil Code section 3291 (leaving the court powerless to redetermine the ruling), the arbitrator's award here expressly contemplated affording Caro her right to statutory costs. Our holding comports with the language of the statutes and the parties' own stipulation, as well as the public interest in encouraging settlement, either before arbitration, or following arbitration and before the entry of judgment on an arbitration award. (See *Woodard, supra,* 171 Cal.App.3d at p. 666; *Joyce* v. *Black, supra,* 217 Cal.App.3d at p. 323.)

We reject Smith's constitutional challenge to the statutory scheme for prejudgment interest. Rather than impairing a defendant's right of access to the courts, it provides a strong statutory incentive to "settle personal injury litigation where plaintiff has been physically as well as economically impaired . . . ." (*Gourley* v. *State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121, 126 [3 Cal.Rptr.2d 666, 822 P.2d 374].) It comports with "the strong public policy favoring plaintiffs' offering to settle and defendants' accepting reasonable offers, and thereby avoiding hearings on the merits." (*Woodard* v.

*Southern Cal. Permanente Medical Group, supra,* 171 Cal.App.3d at p. 666.)[6] Smith has not been denied her day in court; only Caro has been deprived of the benefits of speedy and simplified dispute resolution by binding arbitration.

The trial court inexplicably omitted Caro's statutory costs of $2,234.20 from its postjudgment cost order. Smith has not challenged the amount of these statutory fees. Once a judgment under Code of Civil Procedure section 1287.4 was entered when the arbitration award was confirmed, Caro, "[a]s the prevailing party . . . was entitled to an award of costs . . . ." (*Cobler* v. *Stanley, Barber, Southard, Brown & Associates, supra,* 217 Cal.App.3d at p. 533.)[7]

## V

Caro requests that Smith's lawyers be assessed at least $12,250 in sanctions for pursuing a frivolous appeal. (Code Civ. Proc., § 907; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) Sanctions may be imposed where one or more frivolous claims constitutes a " 'significant and material part of the appeal.' " (*People* ex rel. *Dept. of Transportation* v. *Outdoor Media Group* (1993) 13 Cal.App.4th 1067, 1080 [17 Cal.Rptr.2d 19].) Caro contends any objectively reasonable attorney would have realized the attempt to upset the entire award was without merit, given that Smith specifically consented to binding arbitration on the record and has never sought to withdraw it.

Smith's lawyers respond that their briefs "speak for themselves." They claim *Blanton* v. *Womancare, Inc., supra,* 38 Cal.3d 396 and *Sanker* v. *Brown, supra,* 167 Cal.App.3d 1144 "specifically have advised the attorneys in this state that stipulations for binding arbitration can indeed be reneged under these circumstances . . . ."

---

[6]Other jurisdictions have rejected similar constitutional challenges to statutory schemes that impose prejudgment interest against defendants who elect to defend rather than settle a case. For example, in *Lester* v. *Sayles* (Mo. 1993) 850 S.W.2d 858, 874, the court determined that Missouri's prejudgment interest statute did not unconstitutionally penalize nonsettling defendants. Such awards provided an incentive to reach a pretrial settlement "without eliminating a defendant's right to defend the suit. It is, in fact, defendants' choice whether to accept the offer, submit a counter offer, or, as here, simply ignore the offer. Thus, the imposition of prejudgment interest does not in any fashion implicate the constitutional right to access our courts." (*Ibid.*)

[7]Caro does not seek to recover costs she incurred *in* arbitration. Unless the parties to a true arbitration otherwise agree, "[t]he Legislature has . . . established a policy that arbitration costs are to be paid by the party incurring them." (*Austin* v. *Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812, 1817 [21 Cal.Rptr.2d 56]; see Code Civ. Proc., § 1284.2.) Here, the stipulation to arbitrate provided that "[t]he costs incurred for the arbitrator services and time are to be shared evenly between the parties."

Caro has abandoned on appeal her request for $6,315 for expert witness fees.

The lawyers' briefs may speak for themselves, but they do not accurately speak for *Blanton* and *Sanker*. Neither case allows attorneys to renege on stipulations they signed; only deceived clients may do that. While *Sanker* recognized "the possibility of [attorney] manipulation" (167 Cal.App.3d at p. 1146), it neither encouraged nor condoned it. The appeal from the judgment following the order confirming the arbitration award lacks even arguable merit.

In imposing sanctions for a frivolous appeal, we consider not only Caro's attorney fees, but also such factors as the need to deter like conduct in the future and the government expense in processing, reviewing and deciding a frivolous appeal. (Code Civ. Proc., § 907; *Bank of California* v. *Varakin* (1990) 216 Cal.App.3d 1630, 1640 [265 Cal.Rptr. 666]; Cal. Rules of Court, rule 26(a).) Because there is no hint of involvement by Smith (whose declaration, as we have noted, is conspicuously absent), we impose sanctions of $12,250 against Baraban and Link only.[8] (*Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1080-1081 [275 Cal.Rptr. 594] [assessing $10,240 sanctions against appellant's attorneys where no evidence that client was personally involved in appeal]; *Kurokawa* v. *Blum* (1988) 199 Cal.App.3d 976, 996 [245 Cal.Rptr. 463] [$15,000 sanctions assessed against appellant's attorney for pursuing frivolous appeal].)

A final word on litigation tactics. Lawyers in an adversarial system are free to inflict hard blows on their opponents as part of their responsibility to zealously guard the interests of their clients, but not low ones. No lawyer should be a person of two truths, his own and his client's. We do not see how the practice of law can long endure as a profession if attorneys will misrepresent their authority to act on their clients' behalf and then attempt to renege on their own signed stipulations. Misinterpreting case authority in an effort to avoid unfavorable outcomes adds to the dishonor.

Perhaps Abraham Lincoln said it best when he admonished his fellow practitioners: " 'Resolve to be honest at all events; and if, in your own judgment, you cannot be an honest lawyer, resolve to be honest without being a lawyer. Choose some other occupation, rather than one in the choosing of which you do, in advance, consent to be a knave.' " (Quoted in Bowdre, *Law Practice: A Place for Moral Values* (1996) 57 Ala. Law. 158, 161.)

The judgment in No. G016245 is affirmed. The judgment in No. G016461 is affirmed as modified to award Caro the additional amount of $2,234.20

---

[8]For this purpose we maintain the fiction that Smith's carrier was not the true client because even if it was, lawyers are (still) held to higher standards.

for statutory costs. In No. G016245 Caro is awarded sanctions against Attorneys Jeffrey H. Baraban and James S. Link jointly in the amount of $12,250, and they and the clerk of this court are *each* ordered to forward a copy of this opinion to the State Bar upon return of the remittitur. (Bus. & Prof. Code, §§ 6086.7, subd. (c) & 6068, subd. (o)(2).) Caro shall have costs on appeal.

Wallin, Acting P. J., and Rylaarsdam, J., concurred.

On December 24, 1997, the opinion was modified to read as printed above. The petition of appellant Joan Irvine Smith for review by the Supreme Court was denied March 11, 1998. Kennard, J., was of the opinion that the petition should be granted.