[No. G019479. Fourth Dist., Div. Three. Mar. 29, 1999.]

SY FIRST FAMILY LIMITED PARTNERSHIP et al., Plaintiffs and Respondents, v.
ANDY CHEUNG et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 4 of the Discussion.

## COUNSEL

Gary E. Shoffner for Defendants and Appellants.

Saavedra & Zufelt and Edward C. Pinchiff for Plaintiffs and Respondents.

## OPINION

**RYLAARSDAM, J.**—This is another in a series of recent cases where the parties agreed to a form of alternative dispute resolution without carefully considering the consequences of the agreement's terms. They were unclear whether they intended to engage in a reference or contractual arbitration. The scope of judicial review applicable to a reference is very different from that applicable to contractual arbitration. This case requires us to determine the nature of the procedure adopted by the parties from their conduct and the primary characteristics of the process described in their agreement. Since judicial review of hybrids does not exist, we must decide if the stipulation is fish or fowl: Did it provide for a reference or for arbitration? We conclude it was the latter.

### FACTS

Plaintiffs, the Sy First Family Limited Partnership and Thomas Young, sued defendants, Palm Hills Development (PHD), a limited partnership, Andy Cheung, PHD's general partner, and the Andy and Jenny Cheung Trust (Trust), over their investments as limited partners in PHD. The complaint asserted causes of action for breach of contract and fraud. It sought to invalidate the parties' partnership agreement, recover the $100,000 each plaintiff contributed to PHD with interest, punitive damages, and attorney fees. In addition, plaintiffs sought relief under Corporations Code former

section 15039 (repealed by Stats. 1996, ch. 1003, §§ 1.2, 18), which authorized a party entitled to rescission of a partnership agreement on the basis of fraud or misrepresentation to acquire a lien on surplus partnership property and obtain indemnification.

Before trial, the parties' attorneys signed and filed a document entitled "STIPULATION AND ORDER RE REFERENCE TO AMERICAN ARBITRATION ASSOCIATION." In it the parties agreed to dismiss all claims except: (1) "Whether [PHD], through its General Partner . . . breached an agreement with plaintiffs . . . to deposit all limited partner contributions into a trust account and to refund the contributions if all the investors did not contribute subscribed amounts"; (2) "[w]hether Andy Cheung intentionally deceived plaintiffs into investing $200,000 by falsely [representing] that all investors had contributed promised funds and that plaintiffs were the only investors who had not yet contributed their limited partner shares"; and (3) "[w]hether plaintiffs are entitled to relief pursuant to Corporations Code [former] [section] 15039." The stipulation also provided "[t]he above claims shall be referred pursuant to Code of Civil Procedure Section 638[, subdivision] (1) to the American Arbitration Association, before a panel of three arbitrators, for Trial pursuant to the Association's Commercial Rules of Arbitration." The parties agreed to equally divide the "costs of the arbitration."

The American Arbitration Association appointed a three-person panel to hear the case. During a preliminary hearing, the panel members expressed concern about the ambiguous nature of the parties' stipulation and inquired whether the matter was to be heard as a judicial reference or binding arbitration. The panel asked the parties to reach an agreement on the nature of the hearing. The parties then submitted another stipulation "reaffirm[ing] their previous Stipulation . . . that Petitioner's [sic] claims are referred to the American Arbitration Association pursuant to Code of Civil Procedure Section 638[, subdivision] (1). The proceeding shall be conducted pursuant to the Association's Commercial Rules of Arbitration." In addition, the second stipulation provided that, "[n]otwithstanding the foregoing, the parties grant each . . . of the arbitrators the immunity of a judicial officer pursuant to [Code of Civil Procedure section] 1280.1."

According to the subsequently prepared statement of decision, when the hearing commenced panel members again sought to define the nature of the proceeding. After some discussion, the panel concluded the case would proceed as an arbitration. The statement of decision asserts the parties concurred in the panel's decision. The hearing proceeded and the panel heard oral testimony from several witnesses and received numerous documents as exhibits. The panel issued an arbitration award which found PHD

and Cheung had breached the agreement, thus entitling each plaintiff to receive $100,000 plus interest. In addition, the award rescinded the investment agreement, imposed a lien on PHD's surplus property, and ordered Cheung to indemnify plaintiffs "by virtue of [his] breach of fiduciary duty." The award also found Cheung did not intentionally deceive plaintiffs concerning the status of the contributed funds.

Plaintiffs filed a petition with the trial court to confirm the award. Defendants opposed it on three grounds: (1) the parties stipulated to a judicial reference and the panel failed to prepare a statement of decision; (2) since the panel found Cheung did not commit fraud, former Corporations Code section 15039 did not permit rescission of the investment agreement; and (3) the panel erred by finding Cheung breached his fiduciary duty because the parties dismissed this claim in the stipulation. The trial court denied the petition, ordered the matter returned to the three-member panel with directions to "reopen the reference and conduct . . . further proceedings," and directed them to prepare and file a "statement of decision." The court noted, "[t]he referees are not bound by the Award of Arbitrators . . . ."

The panel held a second hearing at which the parties merely reargued the matter. Thereafter, the panel issued a 30-page statement of decision. The statement again found for the plaintiffs but differed from the arbitration award by awarding each of them $100,000 on their contract claim and another $100,000 on their fraud claim. It also again rescinded the partnership agreement, and pursuant to former Corporations Code section 15039, imposed a lien of $100,000 for each plaintiff against PHD's assets, and ordered Cheung to indemnify each plaintiff in the same amount. At plaintiffs' request, the trial court entered a judgment conforming to the statement of decision.

DISCUSSION

1. *Introduction*

In their opening brief, defendants assert: (1) The panel erred in construing the terms of the parties' contract; (2) the statement of decision fails to support the judgment against Trust; (3) there were irregularities in the panel's handling of the proceeding; (4) the trial court erred by denying their new trial motion; and (5) the judgment awards duplicative and inconsistent relief. We asked the parties to brief several questions including the following: "1. Was the order denying respondents' petition to confirm the . . . award an appealable order . . . ? [¶] 2. Did the hearing before the three member panel constitute an arbitration or a reference?"

## 2. The Nature of the Stipulation

■ The stipulation is an agreement and subject to the ordinary rules employed to interpret contracts. (*Palmer* v. *City of Long Beach* (1948) 33 Cal.2d 134, 142 [199 P.2d 952]; *Porreco* v. *Red Top RV Center* (1989) 216 Cal.App.3d 113, 119 [264 Cal.Rptr. 609]; *Harris* v. *Spinali Auto Sales, Inc.* (1962) 202 Cal.App.2d 215, 219 [20 Cal.Rptr. 586].) A court's paramount consideration in construing the stipulation is the parties' objective intent when they entered into it. (Civ. Code, § 1636; *Porreco* v. *Red Top RV Center, supra,* 216 Cal.App.3d at p. 119.)

There are significant differences between a judicial reference and a contractual arbitration. ■ "A reference by the trial court involves the sending of a pending action or proceeding, or some issue raised therein, to a referee for hearing, determination and report back to the court." (*Jovine* v. *FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1521 [76 Cal.Rptr.2d 322]; 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 58, p. 457.) A general reference occurs where the court, with the consent of the parties, directs a referee to try any or all of the issues in the action. (Code Civ. Proc., § 638; *Ruisi* v. *Thieriot* (1997) 53 Cal.App.4th 1197, 1208 [62 Cal.Rptr.2d 766].) The court appoints the referee, although the person chosen may be the result of the parties' agreement. (Code Civ. Proc., § 640.) The hearing before a referee is conducted in the same manner as it would be before a court under the rules of evidence applicable to judicial proceedings. (Evid. Code, § 300; *Rice* v. *Brown* (1951) 104 Cal.App.2d 100, 103, 106-107 [231 P.2d 65]; *In re McNamee* (1933) 131 Cal.App. 30, 31 [20 P.2d 722].) In the case of a general reference, the referee must prepare a statement of decision which stands as the decision of the court and is reviewable in the same manner as if the court had rendered it. (Code Civ. Proc., §§ 644, 645; *Jovine* v. *FHP, Inc., supra,* 64 Cal.App.4th at p. 1522; *In re Marriage of Demblewski* (1994) 26 Cal.App.4th 232, 236 [31 Cal.Rptr.2d 533]; 6 Witkin, Cal. Procedure, *supra,* Proceedings Without Trial, §§ 68, 69, pp. 466-468.)

■ An arbitration is defined as, " '[a] process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard. Where arbitration is voluntary, the disputing parties select the arbitrator who has the power to render a binding decision.' [Citation.]" (*Cheng-Canindin* v. *Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 684 [57 Cal.Rptr.2d 867].) Contractual arbitration includes the following attributes: "(1) [A] third party decision maker; (2) a mechanism for ensuring neutrality with respect to the rendering of the decision; (3) a decision maker who is chosen by the parties;

(4) an opportunity for both parties to be heard, and (5) a binding decision." (*Ibid.*; see also *Elliott & Ten Eyck Partnership* v. *City of Long Beach* (1997) 57 Cal.App.4th 495, 503 [67 Cal.Rptr.2d 140].) Unless the parties otherwise agree, the rules of evidence and judicial procedure do not apply. (Code Civ. Proc., § 1282.2, subd. (d).) Arbitrators are not bound to decide cases in accordance with the law and may base a decision on principles of justice and equity. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 11-12 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

██ The nature of the parties' stipulation is ambiguous. The stipulation used the term "reference" in its title. It cited Code of Civil Procedure section 638. Furthermore, a court may appoint up to three persons to serve as referees on a matter. (See Code Civ. Proc., § 640.) But the stipulation also provided the matter would be tried before a panel appointed by the American Arbitration Association, characterized the panel members as "arbitrators" and allocated the "costs of arbitration" between the parties. Most significantly, the stipulation declared the case would be tried under the American Arbitration Association's Commercial Arbitration Rules.

Although the stipulation's title used the term reference, labels are not controlling. (See *National Union Fire Ins. Co.* v. *Nationwide Ins. Co.* (1999) 69 Cal.App.4th 709, 715 [82 Cal.Rptr.2d 16]; *Elliott & Ten Eyck Partnership* v. *City of Long Beach, supra,* 57 Cal.App.4th at p. 503.) Defendants note the parties' repetitious citation to Code of Civil Procedure section 638. ██ But, where practicable, the meaning of an agreement must be derived from a reading of the whole contract. (Civ. Code, § 1641; *Foothill Properties* v. *Lyon/Copley Corona Associates* (1996) 46 Cal.App.4th 1542, 1550 [54 Cal.Rptr.2d 488].) When an inconsistency exists in the language of a contract, courts must give effect to the parties' main purpose. (Civ. Code, § 1653; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 695, p. 628.)

██ One important factor indicating the proceeding involved binding arbitration is the parties' conduct after entering into the stipulation. (See *Crestview Cemetery Assn.* v. *Dieden* (1960) 54 Cal.2d 744, 752-753, 754 [8 Cal.Rptr. 427, 356 P.2d 171]; *Oceanside 84, Ltd.* v. *Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1449 [66 Cal.Rptr.2d 487].) After initially asking the parties to clarify the nature of the hearing with no success, the panel again raised the issue when the first hearing began. After discussing the matter, the panel determined they would sit and function as arbitrators and issue an arbitration award. According to the statement of decision, "[t]he parties, with their counsel, expressly concurred and affirmatively agreed with the findings and conclusions of the panel. . . ."

Defense counsel's declaration opposing entry of the judgment is significant for what it does not say. Counsel asserted, "the parties did not orally relieve the referees of their obligation to explain the legal and factual basis for their decision." But he did not deny the panel informed the parties it considered the matter binding arbitration, or claim the defendants objected to the case proceeding in that fashion. Consequently, defendants and their attorney impliedly accepted the panel's decision to treat the matter as binding arbitration. (See, e.g., *Grubb & Ellis Co.* v. *Bello* (1993) 19 Cal.App.4th 231, 237 [23 Cal.Rptr.2d 281].) To allow defendants to await the outcome of the hearing before objecting to the manner in which the panel decided the case, would countenance the type of " 'procedural gamesmanship' " we have condemned in other cases. (*Caro* v. *Smith* (1997) 59 Cal.App.4th 725, 731-732 [69 Cal.Rptr.2d 306].) The parties' conduct also rebuts defendants' claim they did not knowingly consent to binding arbitration. (Compare *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 407-408 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109] with *Caro* v. *Smith, supra,* 59 Cal.App.4th 725.)

Most significantly, the stipulation's substance reflects it constituted an agreement for binding arbitration. Not only did the parties agree to a hearing before a panel of "arbitrators" appointed by the American Arbitration Association, it is of particular importance that they agreed to conduct the hearing under the Association's Commercial Arbitration Rules, not the rules of evidence and procedure normally used in judicial litigation. The version of the association's rules in effect when the parties tried this case, established a means for choosing neutral arbitrators. (American Arbitration Assn., Commercial Arbitration Rules (1992) §§ 12 [Qualifications of Arbitrator], 13 [Appointment], 19 [Disclosure and Challenge Procedure].) The rules also delineated the procedure for a hearing where each party would have an opportunity to present its case. (American Arbitration Assn., Com. Arbitration Rules, *supra*, §§ 21 [Date, Time and Place of Hearing], 22 [Representation], 25 [Attendance at Hearing], 27 [Oaths], 29 [Order of Proceedings/Communications with Arbitrator], 30 [Arbitration in Absence of Party or Representative], 31-33 [Evidence and Inspections or Investigations], 35-37 [Closing, Reopening and Waiver of Hearing].)

Critical differences exist between the evidentiary and procedural rules applicable to a judicial proceeding and a hearing under the American Arbitration Association's Commercial Arbitration Rules. When the parties tried this case, section 31 of the Commercial Arbitration Rules declared, "[t]he arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be

necessary." An arbitrator could "grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties . . . ." (American Arbitration Assn., Commercial Arbitration Rules, *supra*, § 43.) Section 42 required only that the award "be in writing[,] . . . signed by a majority of the arbitrators," and "executed in the manner required by law." (American Arbitration Assn., Com. Arbitration Rules, *supra*, § 42.) Finally, section 52 provided "[t]he arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. . . ." (American Arbitration Assn., Com. Arbitration Rules, *supra*, § 52.) It is inappropriate for a court to review an arbitration decision issued after a hearing conducted under rules of evidence and procedure not applicable in courts of law.

Given the language of the stipulation, and in particular, the agreement to try the case under the American Arbitration Association's Commercial Arbitration Rules, along with the panel's prehearing inquiries about the nature of the proceeding, and the implied consent reflected by both the parties and counsels' conduct, the stipulation constituted an agreement to participate in binding arbitration.

### 3. The Trial Court Erred in Denying the Petition to Confirm the Arbitration Award

Since the parties agreed to binding arbitration, the question arises whether the trial court erred by denying plaintiffs' petition to confirm the panel's initial award. A finding the trial court erroneously denied the petition would obviate the need to consider defendants' objections concerning the judgment based on the subsequently prepared statement of decision.

The first question is whether the ruling on plaintiffs' petition is subject to review in this appeal. Defendants argue it cannot be reviewed because the denial of the petition was an appealable order which became final when plaintiffs failed to appeal the ruling.

Code of Civil Procedure section 906 authorizes an appellate court to review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment . . . appealed from," including "matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment . . . ." However, an appellate court cannot review "any decision or order from which an appeal might have been taken." (*Ibid.*)

"Appellate jurisdiction is solely within the province of our Legislature, since the right to appeal is not conferred by our Constitution but by

statute. [Citation.] This court is without power to bestow jurisdiction on itself, nor may the parties create jurisdiction by consent, waiver, or estoppel." (*Mid-Wilshire Associates* v. *O'Leary* (1992) 7 Cal.App.4th 1450, 1455 [9 Cal.Rptr.2d 862], fn. omitted.)

 Code of Civil Procedure section 1294 authorizes an appeal from "[a]n order dismissing a petition to confirm, correct or vacate an award." (Code Civ. Proc., § 1294, subd. (b).) In *Mid-Wilshire Associates* v. *O'Leary, supra,* 7 Cal.App.4th 1450, the Court of Appeal held there is a difference between the dismissal of a petition to confirm, correct or vacate an arbitration award and the denial of the same petition, and dismissed an appeal from an order denying a petition to vacate or correct such an award. (*Id.* at pp. 1454-1455.)

But even without drawing a distinction between the dismissal of a petition and the denial of a petition, the record clearly establishes the trial court's order constituted an interlocutory rather than a final ruling. (*Lacey* v. *Bertone* (1949) 33 Cal.2d 649, 653 [203 P.2d 755].) The court remanded the matter to the panel for further proceedings, stating the panel was not bound by its prior findings. For the foregoing reasons, the order denying plaintiffs' petition to confirm the initial award was not an appealable ruling and the correctness of the order is properly before this court.

The next question is whether the trial court erred by denying plaintiffs' petition to confirm the arbitration award. To uphold public policy favoring the use of arbitration as a relatively quick and inexpensive form of dispute resolution, and to vindicate the parties' intention of obtaining a final award, judicial review of arbitration awards is limited. (*Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at p. 9; *California Faculty Assn.* v. *Superior Court* (1998) 63 Cal.App.4th 935, 943-944 [75 Cal.Rptr.2d 1].) The permissible grounds of judicial review are found in Code of Civil Procedure sections 1286.2 (vacating awards) and 1286.6 (correcting awards). The only possible basis for relief in this case is that "[t]he arbitrators exceeded their powers . . . ." (Code Civ. Proc., §§ 1286.2, subd. (d), 1286.6, subd. (b).) "Courts may not review either the merits of the controversy or the sufficiency of the evidence supporting the award. [Citation.]" (*California Faculty Assn.* v. *Superior Court, supra,* 63 Cal.App.4th at p. 943.)

 Defendants objected to confirmation of the award on three grounds. Since the parties stipulated to binding arbitration, the first ground, failure to prepare a statement of decision, is clearly without merit. Furthermore, the panel eventually did prepare a statement of decision.

The second objection asserted the award was contrary to law since it granted relief under former Corporations Code section 15039 without a finding of fraud. But "with limited exceptions, '. . . an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties.' [Citation.]" (*California Faculty Assn.* v. *Superior Court, supra,* 63 Cal.App.4th at pp. 943-944; see also *Caro* v. *Smith, supra,* 59 Cal.App.4th at p. 735 ["Arbitrators do not exceed the scope of their authority because they erroneously decide a contested issue of fact or law; the parties' expectation of finality from a binding arbitration requires that 'judicial intervention in the arbitration process be minimized.' [Citation.]"].) Even assuming the arbitrators erred by granting relief under former Corporations Code section 15039, their decision was not subject to correction by the trial court.

Defendants' third objection to the petition was that it granted relief for Cheung's purported breach of his fiduciary duty, an issue they claim had been dismissed by the parties' stipulation. In effect, they contend the arbitrators' decision exceeded the scope of the arbitration agreement.

█ An arbitrator's choice of a remedy "must bear some rational relationship to the contract and the breach." (*Advanced Micro Devices, Inc.* v. *Intel Corp.* (1994) 9 Cal.4th 362, 381 [36 Cal.Rptr.2d 581, 885 P.2d 994].) "Arbitrators are not obliged to read contracts literally, and an award may not be vacated merely because the court is unable to find the relief granted was authorized by a specific term of the contract. . . . The required link may be to the contractual terms as actually interpreted by the arbitrator (if the arbitrator has made that interpretation known), to an interpretation implied in the award itself, or to a plausible theory of the contract's general subject matter, framework or intent. [Citation.] The award must be related in a rational manner to the breach (as expressly or impliedly found by the arbitrator). Where the damage is difficult to determine or measure, the arbitrator enjoys correspondingly broader discretion to fashion a remedy. [Citation.] [¶] The award will be upheld so long as it was even arguably based on the contract; it may be vacated only if the reviewing court is *compelled* to infer the award was based on an extrinsic source. [Citations.] In close cases the arbitrator's decision must stand. [Citation.]" (*Ibid.,* fn. omitted.)

█ The stipulation authorized the arbitrators to decide "[w]hether plaintiffs are entitled to relief pursuant to [former] Corporations Code [section] 15039 and a lien on surplus partnership property . . . and to be indemnified by Andy Cheung for damages." Former Corporations Code

section 15039 declared, "[w]here a partnership contract is rescinded on the ground of the fraud or misrepresentation of one of the parties thereto the party entitled to rescind" would be "entitled" "[t]o be indemnified by the person guilty of the fraud or making the representation . . . ." (Former Corp. Code, § 15039, subd. (c).)

The arbitrators found Cheung did not "intentionally deceive[]" plaintiffs. But the stipulation did not limit the scope of relief to intentionally false representations. In finding plaintiffs were entitled to indemnification from Cheung "by virtue of [his] breach of fiduciary duty," the arbitrators may have concluded he made a negligent representation supporting this remedy. Their decision to award plaintiffs indemnification based on Cheung's breach of his fiduciary duty did not exceed the relief authorized by the parties' stipulation.

4. *The Bankruptcy**

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The matter is remanded to the superior court with directions to proceed as indicated in part 4 of the discussion and to thereafter enter a judgment conforming to the award of the arbitrators. As so modified, the judgment is affirmed. Plaintiffs shall recover their costs on appeal.

Crosby, Acting P. J., and Wallin, J.,† concurred.

---

*See footnote, *ante,* page 1334.

†Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Coonstitution.